JOHN P. CANN, Custodian of a fund under the last Will and Testament of Clara L. Clayton, deceased,

*vs.*

MARY W. VAN SANT, CLARENCE R. CLAYTON, ADELLA C. FRAME, ADELLA C. FRAME, Executrix under the last Will and Testament of Lillie C. Draper, deceased, and JOHN P. CANN, Administrator of the Estate of Richard C. Draper, deceased.

*New Castle, Feb.* 29, 1940.

*Daniel F. Wolcott,* for defendants Mary W. Van Sant and John P. Cann, Administrator of the Estate of Richard C. Draper, deceased.

*James R. Morford,* of the firm of Marvel & Morford, for defendants Clarence R. Clayton, Adella C. Frame, and Adella C. Frame, Executrix under the will of Lillie C. Draper, deceased.

THE VICE-CHANCELLOR: The defendants, divided into two groups, make claim to certain stock which is the investment of a sum of two thousand dollars given under the will and codicil of Clara L. Clayton. The rights of the defendants to the stock depend upon a construction of these instruments. The testatrix gave to her daughter, Lillie C. Draper, an equitable life estate in the fund. It is with the future interests following this life estate that the present problem of construction is concerned.

The testatrix died in 1923 leaving four children: Lydia M. Clayton, Clarence R. Clayton, Adella C. Frame and Lillie

C. Draper. To Lydia M. Clayton and Clarence R. Clayton she devised one of her farms. In the same item of her will she directed that these devisees should each pay to her estate the sum of one thousand dollars, and she charged these sums upon the shares so devised.

In the only codicil to her will the testatrix modified the foregoing direction by providing:

"* * * I now desire to change said charge and direct that my said children instead of paying each the sum of One Thousand Dollars to my estate, shall pay each the sum of One Thousand Dollars to Lydia M. Clayton in trust for Lillie C. Draper, the said charge to bear interest at six per centum per annum from the time of my death until the payment of said charges and the said amounts to be held by the said Lydia M. Clayton, Trustee, under and subject to the same trusts and conditions as set forth in Item Four of my said will in reference to other property held by the said Lydia M. Clayton in trust, for my daughter Lillie C. Draper."

By item four of the will, the testatrix devised another of her farms as follows:

"I give and devise to Lydia M. Clayton (my daughter) and to her heirs, the farm * * * known as the Barron farm * * * to have and to hold the same in trust nevertheless to manage and control the same, and pay over the net rents and income thereof to my daughter, Lillie C. Draper, for and during the term of her natural life and at and upon her death I give and devise the said plantation and tract of land to my grandson, Richard Clayton Draper, his heirs and assigns forever, but if the said Richard C. Draper shall die before arriving at the age of twenty-one years and without leaving a child or children to survive him, then upon the death of the said Lillie C. Draper, if she should survive my said grandson, Richard C. Draper, or upon his death as aforesaid if he should survive her, before arriving at the age of twenty-one years and without leaving a child or children then I give and devise the said farm to my own right heirs in fee simple, and if my said daughter, Lillie C. Draper, shall die before my grandson, Richard C. Draper shall arrive at the age of twenty-one years, my will and desire is that the said Lydia M. Clayton shall hold the said premises for the said Richard C. Draper upon the same trusts and in the same way as is provided for my said daughter, Lillie C. Draper, until his arrival at the age of twenty-one years, or death before that time."

Richard C. Draper survived the testatrix, but predeceased his mother, Lillie C. Draper. At his death in 1932

he was more than twenty-one years of age, had no issue, but left surviving him a widow, now Mary W. Van Sant, one of the defendants. Lillie C. Draper is now deceased.

Lydia M. Clayton died in 1931 never having undertaken her duties as trustee with respect to the gift of two thousand dollars. After her death, her brother, Clarence R. Clayton, paid over the entire sum of two thousand dollars to John P. Cann, who, at the request of certain of the parties concerned, invested the sum by purchasing forty-five shares of the common capital stock of the Delaware Railroad Company. He now holds this stock subject to the provisions of the will relating to the two thousand dollars and as such custodian has brought this interpleader suit. The prayers of the bill are that the defendants answer it, that complainant be allowed to deposit the stock and any dividends with this court, and that he be discharged of all further liability.

The widow and administrator of Richard C. Draper have answered the bill and claimed the stock on the ground that under the will and codicil, Richard took a vested remainder in the gift of two thousand dollars (after the equitable life estate of Lillie C. Draper) subject to divestment upon the happening of contingencies which, prior to his decease, became impossible of fulfillment; that the equitable life estate of Mrs. Draper having terminated at her death, the stock should be delivered to Richard's administrator.

The remaining defendants, Clarence R. Clayton and Adella C. Frame, in her individual capacity and as executrix under Mrs. Draper's will, have likewise filed answers. They deny that Richard took any interest in the fund and consequently deny that his administrator or widow has any right to it. On the other hand, they assert that the future interest following the equitable life estate passed to the residuary donees; and that these defendants are the surviving residuary donees and are entitled to all of the property of those now deceased.

In support of this contention they first point to the direction of the codicil that the two thousand dollars be paid to the testatrix' daughter, "Lydia M. Clayton in trust for Lillie C. Draper." From this they deduce that Mrs. Draper is the only beneficiary of the trust declared. If the codicil had stopped at this point, there would be force to the contention. However, it does not stop. Instead, it directs that the money be held by the trustee "under and subject to the *same trusts and conditions* as set forth in Item Four" of the will "in reference to other property held" by the trustee in trust for Mrs. Draper. By virtue of this express direction, the codicil incorporates by reference the trusts and conditions, whatever they may be, set forth in the stated item of the will. So that, it remains to be determined from that item whether or not there are any beneficiaries of the fund in addition to Mrs. Draper.

Considering next item four of the will, these defendants say that the only *trust* declared with respect to the farm thereby devised is that the trustee should hold and manage the same and pay over the net income to Mrs. Draper during her life. Here, they contend, the *trust* terminates; there is no other person who has any beneficial interest in the property "as trust property." Their argument then proceeds that the language of the will following the gift of income is a direct devise to Richard, for the testatrix uses the words "at and upon her [the life beneficiary's] death I give and devise the said plantation and tract of land to my grandson, Richard Clayton Draper, his heirs and assigns forever, * · * *"; that since the codicil adopts only the *trusts* relating to the farm, none other than those provisions which define a trust are applicable to the gift of two thousand dollars; that, consequently, the testatrix failed to provide any trust with relation to the future interest following the life estate.

The offered construction is untenable. The task of will construction is not accomplished by a mere application of

superficial literalism to isolated phrases. Rather does it require a searching analysis and weighing of all pertinent testamentary expressions, with a constant resort to reason.

The words following the limitations of the life estate, "give and devise * * * to my grandson * * * his heirs and assigns" are sufficient to limit a remainder whether or not as part of a trust. In either case the language would cause the full legal and equitable estate to unite in the beneficiary at the appointed time. Hence, the contention of the residuary donees is essentially no more than that the trustee took only a legal life estate. This overlooks what precedes as well as what follows in the will.

By item four the testatrix gave the farm to "Lydia M. Clayton * * * and to her heirs" in trust. She thus purported to devise the absolute legal title to the trustee, not a mere life interest. This is consistent with subsequent provisions, for the duties of the trustee might continue beyond the life of Mrs. Draper. The testatrix directed that if Mrs. Draper should die during the minority of Richard, "my will and desire is that the said Lydia M. Clayton shall hold the said premises for the said Richard C. Draper upon the same trusts and in the same way as is provided for my said daughter, Lillie C. Draper until his arrival at the age of twenty-one years, or death before that time." This is a trust, in terminology of a trust, and the beneficiary is other than Mrs. Draper. No reason has been suggested why it should be excluded from the trusts of the will adopted by the codicil.

There are other indications that the "trusts and conditions" adopted were meant to include the remainder to Richard. The trust to hold the property until his majority or prior death, as written in this will, was manifestly intended not as an independent gift but rather as a qualification of the remainder to Richard by postponing its full and complete enjoyment. Further, the codicil incorporates "the same trusts and *conditions*." Even if the strictest trust

terminology be required to answer the description of "trusts," yet, where are the "conditions"—or anything remotely resembling conditions—in the language of the will providing for the payment of income to Mrs. Draper? There are none, except only the conditions which relate to the gift over; in other words, the contingencies upon the happening of which the remainder to Richard should be defeated, and the property should pass to testatrix' heirs. The unequivocal adoption of limitations subordinate to or so closely connected with the remainder is consistent with an intent to adopt the remainder as well. All of these provisions together constitute an integrated delineation of the future interests following the life estate; and it would be a strained construction indeed to say that the codicil requires that they be emasculated for the purpose of the adoption made by it.

If there were left any shadow of doubt as to this construction, such would of necessity be disspelled by a reading of the entire will and codicil. Testatrix divided her estate among her children. To three of them she made absolute gifts. But all gifts to Mrs. Draper bore the same qualifications. After the residuary clause in the will we find:

"6. It is my will and I do direct that all the estate, interest and property which under this will might belong to my daughter, Lillie C. Draper, shall be held by the said Lydia M. Clayton in trust to manage and control the same and pay over the net rents, income and profits thereof to the said Lillie C. Draper, for and during her natural life and after her death to be paid to her son, Richard C. Draper, *in the same manner and under the same conditions, limitations and restrictions as are provided in the devise of the Barron farm in the 'Fourth' item of this my will.*"

After empowering the trustee to sell Mrs. Draper's share of realty passing under the residuary clause, item seven directs:

"* * * the proceeds of such sales to be invested by the said Trustee for the benefit of the said Lillie C. Draper for the term of her natural life as above set forth, and after her decease the same to be paid to her son, Richard C. Draper, *according to the provisions above set forth as to the other bequests and devises in her favor* * * *."

Similar expressions appear in other items of the codicil with reference to the property from which Mrs. Draper was to benefit. Thus in item third:

"* * * the share of the said Lillie C. Draper to be held under the same limitations and conditions as *all of her other property* devised or bequeathed to her by my will or any codicil thereto."

Again in item fourth:

"* * * the interest of the said Lillie C. Draper being subject to the same trusts and limitations as set out for *her other property* in Item Four of my said will."

The foregoing provisions admit of no other reasonable construction than that the testatrix intended a single donative scheme as to all property from which Mrs. Draper was to benefit: A gift of the income for life and the remainder at her death to the beneficiaries and in the manner as set forth in item four of the will.

The solicitor for the residuary donees next contends that even if the gift of the remainder to Richard is applicable to the gift under the codicil, nevertheless, the administrator and widow of Richard are entitled to no part of the fund, because, he says, Richard's interest was not vested at the time of his death. The learned solicitor urges that the words in the limitation to Richard, "at and upon" the death of the life tenant caused the gift to be contingent until the termination of the life estate. He concedes that such language as applied to a gift of realty has been held to pass a vested estate; but contends that the use of these words in reference to gifts of personalty creates a contingent interest.

The concession that the remainder interest in the farm was vested would seem to constitute a concession that the remainder in the two thousand dollars was likewise vested because the codicil directs that the sum be held "under and subject to the same trusts and conditions" set forth in the will. But without regard to this, the contention is otherwise

unsound. Whether the subject matter be realty or personalty, the charcter of the estate as vested or contingent is not determined solely by the fact that the gift is limited to the beneficiary "at" a future time, or "upon" or "at and upon" a future event. If the time or event is annexed to the payment or distribution of the gift, it is vested, if to the substance of the gift, it is contingent. *Conwell's Adm'r. v. Heavilo's Adm'r.,* 5 *Har.* 296. Under this rule, a gift to an identified person or class, of a remainder following a life estate is not rendered contingent merely by the qualification of words such as "at" or "upon" the death of the life tenant. *Wilmington Trust Co. v. Bronxville Trust Co., ante p.* 64, 5 *A.* 2d 248; *In re Estate of Moses Journey,* 7 *Del. Ch.* 1, 44 *A.* 795; *Conwell's Adm'r. v. Heavilo's Adm'r., supra;* *Blackstone v. Chandler,* 15 *Del. Ch.* 1, 130 *A.* 34; *Rubencane v. McKee,* 6 *Del. Ch.* 40, 6 *A.* 639; 2 *Restatement of the Law of Property,* § 157, *Comment j.*

Nor is the remainder made contingent by the provisions for a gift to the testatrix' heirs "if the said Richard C. Draper shall die before arriving at the age of twenty-one years and without leaving a child or children to survive him." An incident of the rule of construction favoring the early vesting of estates is that in the absence of a clear manifestation of a different intent, courts construe conditions as subsequent rather than precedent where such construction will give the donee a vested estate subject to be divested, instead of deferring the vesting. *Boulden v. Dean,* 167 *Md.* 101, 173 *A.* 26; 1 *Tiffany on Real Property,* §§ 80, 138; 28 *R. C. L. pp.* 231-233. The conditions now under consideration follow limitations which alone would unquestionably be a vested remainder. They in nowise define circumstances under which the remainderman shall take or which must necessarily precede the vesting of the estate. They are palpably contingencies upon the occurrence of which the remainder should be divested, and may, quite consistently with the expressed intent, follow the vesting. Indeed, they are typical of provisions for defeasance or divestment. Com-

pare: *Delaware Trust Co., Adm'r., v. Elliott, et al.,* 17 *Del. Ch.* 14, 147 *A.* 244; *Mock, et al., v. Goldstein,* 18 *Del. Ch.* 71, 156 *A.* 221; 2 *Restatement of the Law of Property,* § 157; *Comment p, Illustration* 12, *Comment r, Illustrations* 19, 20; 1 *Simes Law of Future Interests,* §§ 60, 69.

The remainder which vested in Richard at the decease of the testatrix was subject to defeasance upon his death before majority and without leaving a surviving child or children. These are the contingencies. The language which follows in the will, "then upon the death of the said Lillie C. Draper, * * * or upon his death * * *" is only a statement of the time when, (the preceding contingencies having occurred), the gift over to testatrix' heirs should become operative. It has been argued that the divesting contingencies should not be treated as double, but as separate and independent and that for this purpose the word "or" should be substituted for the word "and." The testatrix herself stated the contingencies twice in the conjunctive. I find no expression elsewhere in the will which indicates that they were intended to be construed otherwise than as they are written. In such case the substitution of "and" for "or" is, of course, not proper. 69 *C. J. pp.* 87, 88.

Thus the divesting contingencies became impossible of fulfillment when Richard attained the age of twenty-one years, and upon his death thereafter, a remainder indefeasibly vested became a part of his estate.

A decree consistent with the foregoing will be advised.

Note. Affirmed by Supreme Court on appeal. See *post p.* 353, 16 *A.* 2d 248.