JANE TILGHMAN RAMSAY STABLER, MARY MORRIS RAMSAY PHELPS, and CAROLINE RAMSAY CHANDLER,

*vs.*

JOSEPH GALES RAMSAY, ALEXANDRA MORRIS RAMSAY, WILLIAM E. PHELPS, WALTER BLACKSON, surviving Trustee under the Will of WILLIAM GOUVERNEUR RAMSAY, deceased, WILMINGTON TRUST COMPANY, surviving Trustee under the Agreement dated February 19, 1926 of CAROLINE R. CHANDLER, WILMINGTON TRUST COMPANY, surviving Trustee under the Agreement dated August 16, 1926 of MARY MORRIS RAMSAY PHELPS, WILMINGTON TRUST COMPANY, surviving Trustee under the Agreement dated March 29, 1926 of JANE TILGHMAN RAMSAY STABLER, CORNELIA STABLER CANBY, WILHELMINA G. STABLER, JANE T. STABLER, WINDER LAIRD STABLER, JR., CAROLINE R. STABLER, CAROLINE CHANDLER DAVIS, ALFRED D. CHANDLER, JR., WILLIAM RAMSAY CHANDLER, MARY MERRILL CHANDLER PARRISH and SOPHIE CHANDLER.

*New Castle, November 23, 1948.*

*Pro confesso* decrees were entered against Alfred D. Chandler, Jr. and William Ramsay Chandler, both of whom were served with process but did not appear.

*William S. Potter*, of the firm of Southerland, Berl & Potter, for Jane Tilghman Ramsay Stabler, Mary Morris Ramsay Phelps and Caroline Ramsay Chandler, complainants.

*William H. Foulk* and *Herbert L. Cobin*, for Joseph Gales Ramsay and Albert L. Massey, guardian *ad litem* for Alexandra Morris Ramsay, minor.

*Robert H. Richards*, of the firm of Richards, Layton & Finger, and *Alexis I. duPont Bayard*, for Walter Blackson, surviving trustee under the will of William Gouverneur Ramsay, deceased, and Wilmington Trust Company,

surviving trustee for Caroline Ramsay Chandler, Mary Morris Ramsay Phelps and Jane Tilghman Ramsay Stabler, under certain *inter vivos* trust agreements.

*Daniel F. Wolcott,* of the firm of Southerland, Berl & Potter, for Robert H. Guilford, guardian *ad litem* for Wilhelmina G. Stabler, Jane T. Stabler, Winder Laird Stabler, Jr., Caroline R. Stabler and Sophie Chandler, minors.

HARRINGTON, Chancellor: William Gouverneur Ramsay died September 28, 1916, a resident of the City of Wilmington, having first made and executed his last will and testament, which after his death was duly probated as such by the Register of Wills, for New Castle County, Delaware. By Item Second of that instrument, he gave, devised and bequeathed the residue of his entire estate to Tilghman Johnston and Walter Blackson in trust, among other things:

"To pay the whole of the net income derived from the trust estate as and when received to my wife, Caroline Johnston Ramsay, during the term of her natural life.

"Upon the death of my said wife I give, devise and bequeath all of the trust estate to my children, Caroline Johnston Ramsay; Elizabeth Gouverneur Morris Ramsay; Joseph Gales Ramsay; Mary Morris Ramsay, and Jane Tilghman Ramsay, absolutely, share and share alike.

"In case any of my said children shall die before my said wife without issue, the share of such deceased child shall be divided among my said children then living and the issue of any deceased child, then living, share and share alike, the issue of any deceased child receiving only the share which it or their parents would have received, if living.

"In case any of my said children shall die before the death of my said wife, leaving issue, the child or children of such deceased child shall inherit the share of its parent."

The testator's will, therefore, bequeathed and devised his residuary estate to trustees, in trust, to pay the entire income therefrom to his widow, Caroline Johnston Ramsay, during her lifetime and at and upon her death gave "all of the trust estate" to his five named children "absolutely, share and share alike." He further provided that if any

child should predecease his said wife without leaving issue, the share of any such child should go to his other children in equal shares; but if any child should predecease his wife leaving issue, such child's share should go to his or her issue *per stirpes*.

William Gouverneur Ramsay's wife, Caroline Johnston Ramsay, and all of his children survived him and are still living. His daughters Caroline Johnston Ramsay is now Caroline Ramsay Chandler; Elizabeth Gouverneur Morris Ramsay is now Elizabeth Gouverneur Morris Chandler; Mary Morris Ramsay is now Mary Morris Ramsay Phelps, and Jane Tilghman Ramsay is now Jane Tilghman Ramsay Stabler.

Tilghman Johnston, one of the trustees named in the will is now deceased, and Walter Blackson is the sole surviving trustee of the estate.

The provisions of the will of William Gouverneur Ramsay gave each child a vested remainder in a one-fifth part of the trust estate, to take effect in possession on the death of his widow. *Cann v. Van Sant*, 24 *Del.Ch.* 300, 11 *A.2d* 388, affirmed on appeal under the name of *Frame v. Cann*, 24 *Del.Ch.* 353, 16 *A.2d* 248; *Gray, Rule Against Perpetuities*, (3rd ed.) 80; *Simes Fut. Interests*, § 60, *etc.;* see also *Mock v. Goldstein*, 18 *Del.Ch.* 71, 156 *A.* 221; *Carpenter v. Carpenter*, 28 *Del.Ch.* 386, 44 *A.2d* 17.

In *Cann v. Van Sant, supra,* the Vice-Chancellor said (24 *Del.Ch.* 300, 11 *A.* 2d 391) :

"If the time or event is annexed to the payment or distribution of the gift, it is vested, * * *."

Professor Gray also pointed out (*Rule Against Perp., supra*) :

"A remainder is vested in A, when, throughout its continuance A, or A and his heirs, have the right to the immediate possession, whenever and however the preceding freehold estate may determine."

Those principles govern this case, though the gifts in trust may consist largely of personal property.

The provision of the will—that if any child should die during the lifetime of the widow without leaving issue, his or her share of the trust estate should "be divided among my (his) said children then living * * * share and share alike"—was clearly a condition subsequent. Should the condition happen in any case, it would defeat the vested interest of the child so dying, but it did not make the remainders contingent. *Cann v. Van Sant, supra; Mock v. Goldstein, supra; Page on Wills,* (*L.T.Ed.*) § 1266; *Walsh on Real Property,* § 293. Evidently, the gift over was intended to take effect on the death of any child and not on the death of the lifetaker of the income. *In re Smith's Estate,* 16 *Del.Ch.* 272, 145 *A.* 671. There can be no real remainder after a vested remainder in fee. 1 *Simes Fut.Int.,* § 75; see also *Restatement Law of Property,* § 156. But a testator can usually provide for an executory limitation over after a vested remainder in fee on the happening of some event. *Delaware Trust Co. v. Elliott,* 17 *Del.Ch.* 14, 147 *A.* 244; *Cann v. Van Sant, supra; In re Nelson's Estate,* 9 *Del.Ch.* 1, 74 *A.* 851; *Ballantine's Law Problems,* 912.

The gifts to the Ramsay children, naming them "absolutely, share and share alike" were also individual gifts and not gifts to a class. *In re Smith's Estate, supra; Salem Nat. Bank & Trust Co. v. Elkinton,* 139 *N.J.Eq.* 429, 51 *A.2d* 889. Each child, therefore, took two interests under their father's will; (1) a vested remainder in a one-fifth part of the trust estate subject to be divested on the happening of a subsequent condition, and (2) a contingent interest by way of an executory limitation over in the primary share of any child who might die without leaving issue in the lifetime of the testator's widow.

After the death of William Gouverneur Ramsay three of his children, Caroline Ramsay Chandler, Mary Morris Ramsay Phelps, and Jane Tilghman Ramsey Stabler, the

complainants in this action, severally executed irrevocable trust agreements with the Wilmington Trust Company and Tilghman Johnston as trustees. These instruments were substantially alike and it is only necessary to consider the one bearing date February 19, 1926, executed by Caroline Ramsay Chandler. It was as follows:

"This Agreement made this nineteenth day of February, 1926, between Caroline R. Chandler, (formerly Caroline Johnston Ramsay) at present residing in Philadelphia County, State of Pennsylvania, party of the first part, hereinafter called 'Trustor', and Wilmington Trust Company, a Corporation of the State of Delaware, and Tilghman Johnston, of the City of Wilmington, State of Delaware, parties of the second part, hereinafter called 'Trustees', Witnesseth:

"Whereas, the parties hereto desire to create a trust of the estate and properties and for the purposes hereinafter named, and

"Whereas, the said Trustor is entitled, under the Will of her father, William G. Ramsay, dated July 2d, 1910, and recorded in the Office of the Register of Wills at Wilmington, Delaware, to a vested remainder or share in a Trust Estate created under said Will, to take effect after the death of her mother, Caroline Johnston Ramsay, as evidenced inter alia by the following clauses of said Will:

" ' To pay the whole of the net income derived from the trust estate as and when received to my wife, Caroline Johnston Ramsay, during the term of her natural life; upon the death of my said wife, I give, devise and bequeath all of the Trust Estate to my children, Caroline Johnston Ramsay, Elizabeth Gouverneur Morris Ramsay, Joseph Gales Ramsay, Mary Morris Ramsay and Jane Tilghman Ramsay, absolutely share and share alike.'

"Now, Therefore, in consideration of the premises and in further consideration of the sum of One Dollar ($1.) paid by Trustor to Trustees at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, Trustor hath assigned, transferred, and set over, and by these presents doth hereby assign, transfer and set over, unto the said Trustees, their Executors, Administrators, Successors and Assigns, all her right, title, interest, claim, demand and share in said Trust Estate, devised and bequeathed to her as aforesaid;

"To have and to hold the said estate, securities and cash, to which said Trustor is entitled after the death of her mother, when and as received; * * *."

The terms of the trust were then set out. The instru-

ment was under seal and was executed by both Caroline Ramsay Chandler and the trustees.

In 1946, at the request of Joseph Gales Ramsay, three of his four sisters, Caroline Johnston Ramsay Chandler, Mary Morris Ramsay Phelps and Jane Tilghman Ramsay Stabler, the complainants in this action, executed the following instrument under seal:

"This Agreement, made and executed this        day of A. D. 1946, by and between Caroline Johnston Ramsay Chandler, Elizabeth Gouverneur Morris Ramsay Chandler, Joseph Gales Ramsay, Mary Morris Phelps and Jane Tilghman Ramsay Stabler, Witnesseth:

"Whereas, under the last will and testament of William Gouverneur Ramsay, late of the City of Wilmington, County of New Castle and State of Delaware, who died on . . . . . his entire residuary estate was devised and bequeathed unto Tilghman Johnston and Walter Blackson, both of Wilmington, Delaware, in trust to pay the whole of the net income as and when received to decedent's wife, Caroline Johnston Ramsay, during the whole term of her natural life;

"And Whereas, under the further provisions of the said will, upon the death of the said life tenant, the principal of said trust estate is given to testator's children, Caroline Johnston Ramsay (now by marriage Caroline Johnston Ramsay Chandler), Elizabeth Gouverneur Morris Ramsay (now by marriage Elizabeth Gouverneur Morris Ramsay Chandler), Joseph Gales Ramsay, Mary Morris Ramsay (now by marriage Mary Morris Ramsay Phelps), and Jane Tilghman Ramsay (now by marriage Jane Tilghman Ramsay Stabler), parties hereto, absolutely, share and share alike;

"And Whereas, the said will further provides that in case any of testator's said children shall die prior to the testator's said wife, without issue, the share of such deceased child shall be divided among decedent's other said children then living, and the issue of any deceased child then living, share and share alike, the issue of a deceased child receiving only the share which their parent would have received if then living;

"And Whereas, the will further provided that in case any of said testator's children shall die before testator's said wife leaving issue, the child or children of such deceased child shall inherit the share of its parent;

"And Whereas, one of the testator's said children, the said Joseph Gales Ramsay, has no natural children, but has one child, Alexandra Morris Ramsay, legally adopted by him;

"And Whereas, under the laws of the State of Delaware as they now exist, the right of said adopted child to inherit any share under the said will should her adoptive father, Joseph Gales Ramsay, predecease testator's said wife, Caroline Johnston Ramsay, is uncertain;[1]

"And Whereas, the said Joseph Gales Ramsay is at present in poor health and the parties hereto being of the opinion that the said adopted child of Joseph Gales Ramsay, to-wit, Alexandra Morris Ramsay, should inherit any share of the estate to which Joseph Gales Ramsay would have been entitled if living, if the said Joseph Gales Ramsay should predecease his mother, Caroline Johnston Ramsay,

"Now This Agreement Witnesseth; that the parties hereto in consideration of the mutual love and affection and in settlement of any legal question which may arise on the death of the said Joseph Gales Ramsay, prior to the death of his said mother, and intending to be legally bound, hereby agree that should the said Joseph Gales Ramsay predecease his said mother, Caroline Johnston Ramsay, then and in that event the adopted child of the said Joseph Gales Ramsay, to-wit, Alexandra Morris Ramsay, shall have the right to receive, and shall receive, any share under the will of the said William Gouverneur Ramsay to which the said Alexandra Morris Ramsay would have been entitled to receive and receive if the said Alexandra Morris Ramsay had been a natural legitimate child of the said Joseph Gales Ramsay."

There are two possible questions for determination:

(1)   Did Caroline Ramsay Chandler, Mary Morris Ramsay Phelps and Jane Tilghman Ramsay Stabler, the complainants, by the irrevocable trust agreements in 1926 assign and transfer all their rights, both vested and contingent, in the trust estate created by the will of their father, William Gouverneur Ramsay; and

(2)   If they assigned only their primary vested interest in a one-fifth part of that fund, is the 1946 contract valid with respect to their contingent executory interest, or has there been a total failure of consideration making that instrument unenforceable?

The complainants seek a declaratory judgment to determine these questions and invoke the aid of *Chapter* 269, *Volume* 46, *Laws of Delaware*. That Act, in part, provides:

---

[1] But see *Glanding v. Industrial Trust Co.*, 28 *Del. Ch.* 499, 45 *A.* 2d 553.

"In cases of actual controversy (except with respect to divorce or annulment of marriage) the Superior Court, the Supreme Court, the Court of Chancery and the Orphans' Court shall have power, upon petition, declaration, complaint or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

\* \* \* \* \* \*

"When a proceeding under this Act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

Whatever may have been the intended scope of the irrevocable agreements executed by the complainants in 1926, their validity is not questioned with respect to any interest transferred to trustees. See *Gray v. Corbit*, 4 *Del. Ch.* 357; *Keen's Lessee v. Hoffecker*, 2 *Har.* 103, 29 *Am. Dec.* 336. The sole question with respect to them is whether they transferred anything more than the complainants' primary vested interests in the trust estate. Joseph Gales Ramsay and the guardian *ad litem* for Alexandra Morris Ramsay claim that only the latter interests were assigned and that the 1946 agreement was applicable to the complainants' contingent interest in Joseph's share in the trust estate.

The intended meaning of the 1926 agreements is controverted, but neither the statements of the person who drew them, nor the statements of the assignors as to what interests they intended to transfer, can be considered in determining that question. *Colvocoresses v. W. S. Wasserman Co.*, 9 *W.W.Harr.* 71, (39 *Del.*) 71, 196 *A.* 181; *Dillon v. Anderson*, 43 *N.Y.* 231, 238. The motion to strike out that evidence is, therefore, granted.

The trustor, by the granting clause—"in consideration of the premises" etc.—assigned and transferred to the trustees, in trust, "all her right, title, interest, claim, demand and share in said Trust Estate, devised and bequeathed

to her as aforesaid; * * *." The *habendum* following that provision was

"To have and to hold the said estate, securities and cash to which the said Trustor is entitled after the death of her mother, when and as received; * * *."

The complainants claim, among other things, that the words "as aforesaid" in the granting clause referred to the preceding words "devised and bequeathed" in the same phrase and mean by the will of William G. Ramsay. They say that the agreement must be interpreted as though Mrs. Chandler had granted to trustees in trust, "all her * * * interest * * * and share in said Trust Estate, devised and bequeathed to her" "by the will of the said William G. Ramsay." In other words, they say that the words "as aforesaid" merely referred to the source of the assignor's rights and did not measure or describe the quantum of such rights. On the other hand, Joseph Gales Ramsay and the guardian *ad litem* claim that the second recital showed that only Mrs. Chandler's vested remainder in the trust estate was intended to be transferred to trustees.

Prior to the granting clause, the agreement recited: (1) that the parties desire to "create a trust of the estate and properties and for the purposes hereinafter named;" and (2) that the "said Trustor is entitled, under the Will of her father, William G. Ramsey * * * to a vested remainder or share in a Trust Estate created under said Will, to take effect after the death of her mother, * * * as evidenced inter alia by the following clauses of said Will:".

The second recital then quoted that part of the will which directed the payment of the income on the trust estate to Mrs. Ramsay during her lifetime and provided for the distribution of the capital upon her death.

Recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument. (*Bath & Montague Case, Ch.Cas.*

*Part* 3, *p.* 107; *Bellisfield v. Holcombe*, 102 *N.J.Eq.* 20, 139 *A.* 817), and if inconsistent with clear and definite language in the granting part the latter will prevail. *Peters v. Mc-Laren*, (6 *Cir.*) 218 F. 410; *Bellisfield v. Holcombe, supra;* 26 *C.J.S., Deeds,* § 90, *page* 338. The granting clause did not identify the property rights assigned so the recitals in the instrument must be referred to in order to determine that question. The second recital referrd to the trust state created by William G. Ramsay's will, but only to a particular interest in that trust. Nor did the first recital refer to the ownership of any other interest. Evidently, the vested remainder in the Ramsay will mentioned in the second recital was the interest in "said Trust Estate, devised and bequeathed to her (Caroline Ramsay Chandler) as aforesaid" which was transferred by the operative part of the agreement. Furthermore, the only reasonable conclusion is that such vested interest was "the estate and properties * * * hereinafter named" mentioned in the first recital which declared the intent of the parties to create a trust. I find nothing in the agreement indicating a different intent with respect to the rights transferred. The *habendum* is consistent with this conclusion. It refers to "the said estate, securities and cash to which the said Trustor is entitled after the death of her mother." The vested remainder in the trust comes within that category, and the words "said estate" do not necessarily refer to any greater interest. If the context requires it, the word "or" may be construed to mean "and", but there is nothing to indicate that it was so used in the Chandler agreement of 1926. The accompanying quotation from the will indicates that the second recital merely referred to the vested interest in the trust estate. Nor can the complainants base any argument with respect to the scope of the agreement on the use of the words "inter alia" in connection with that quotation. It necessarily follows that the 1926 contracts executed by the other complainants likewise transferred only their vested rights in the Ramsay trust. Though such interests were subject to be divested by the happening of conditions sub-

sequent, it is quite possible that the assignors regarded them as their most certain and valuable interests in the estate.

The 1946 agreement recited the provisions of Major Ramsay's will with respect to the disposition of the share of any child who should die without issue during the lifetime of their mother; that Joseph Gales Ramsay had no natural born children but had an adopted daughter, Alexandra Morris Ramsay, and under the laws of the State of Delaware her right "to inherit any share under the said will should her adoptive father, Joseph Gales Ramsay, predecease testator's said wife" was uncertain. It then provided that "should * * * Joseph Gales Ramsay predecease his said mother * * *, the adopted child of the said Joseph Gales Ramsay, to-wit: Alexandra Morris Ramsay, shall have the right to receive and shall receive any share under the will of the said William Gouverneur Ramsay to which the said Alexandra Morris Ramsay would have been entitled to receive and receive if the said Alexandra Morris Ramsay had been a natural legitimate child of the said Joseph Gales Ramsay."

The stated considerations for that promise were "mutual love and affection and in settlement of any legal question which may arise on the death of the said Joseph Gales Ramsay prior to the death of his said mother."

The contracting persons and Alexandra Morris Ramsay are parties to this proceeding and, though under seal, such a contract can now be enforced in this State by a third party donee beneficiary. *Wilmington Housing Authority v. Fidelity & Deposit Co.*, 4 *Terry* (43 *Del.*) 381, 47 A. 2d 524, 170 *A.L.R.* 1288; see also I *Williston on Contracts*, (*Rev. Ed.*), §§ 356-359. But a failure of consideration is relied on as a defense to the enforcement of the contract against the complainants. It is said (1) that it contemplated the substitution of Alexandra Morris Ramsay for a "natural legitimate child" of Joseph Gales Ramsay, and intended all persons having contingent interests in Joseph's share

of the trust estate to execute the instrument, and (2) because of the failure of Elizabeth (Elizabeth Gouverneur Ramsay Chandler) to execute it, Joseph cannot perform his promise with respect to the settlement of "any legal question which may arise" regarding Alexandra's rights. A failure of consideration is a well recognized defense to an action seeking to enforce an agreement. *Perrine v. Pennroad Corp.*, 29 *Del.Ch.* 423, 51 *A.2d* 327; 1 *Restatement Law of Contracts*, § 274. The *Restatement* says:

"In promises for an agreed exchange, any material failure of performance by one party, not justified by the conduct of the other, discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. * * *"

This principle applies though the contract be under seal. *Piper v. Queeney*, 282 *Pa.* 135, 127 *A.* 474; *In re Commonwealth Trust Co. of Pittsburgh*, 357 *Pa.* 349, 54 *A.2d* 649; *Williston on Contracts*, (Rev.Ed.) § 109. *Garden, Executor, v. Derrickson, et al.*, 2 *Del.Ch.* 386, 95 *Am.Dec.* 286, does not lay down any different rule.

Professor Williston points out (§ 109, *supra*) :

"Though a sealed promise is binding without consideration, where no consideration is bargained for most sealed promises, like unsealed promises, are not intended to be given gratuitously but in exchange for a consideration, and a failure, that is a failure to receive the intended exchange, must be sharply distinguished from the lack of consideration."

Furthermore, mutual love and affection, though one of the agreed considerations, is nothing more than motive or moral obligation and is not sufficient to sustain an executory contract. *Williston on Contracts, supra*, § 110. Joseph naturally wished all persons having a contingent interest in his share of the estate to sign the instrument for Alexandra's benefit and named them as parties thereto, but it does not follow that the signature of all were essential to its enforcement against those who executed it. The interests given Major Ramsay's children by his will were separate and distinct and a reasonable construction of the

language of the contract seems to indicate that Joseph's promise, in return for which certain rights were to be given his adopted daughter, only referred to individual settlements of any possible controversies with his sisters. Each of the complainants had the right to contract for the transfer of any contingent interest in Joseph's share, and to say that Alexandra would take no rights unless all signed the agreement would seem to construe its provisions too strictly. Elizabeth's refusal to execute the instrument, therefore, did not constitute a failure of consideration. In view of this conclusion, the cases cited by the trustees (*Krell v. Henry*, (1903) 2 *K.B.* 740; *Marks Realty Co. v. Hotel Hermitage Co.*, 170 *App.Div.* 484, 156 *N.Y.S.* 179; *La Cumbre Golf, etc., Club v. Santa Barbara Hotel Co.*, 205 *Cal.* 422, 271 *P.* 476) need not be considered.

The complainants claim, however, that when they executed the 1946 agreement it was understood that they would not be bound unless all other named persons should also sign it. This claim is based on representations alleged to have been made by Mrs. Joseph G. Ramsay at the time she brought the paper to the several complainants and requested them to execute it. Her husband had already affixed his signature. Elizabeth, the other sister, resided in South Carolina and was not in Delaware at the time.

If some of several parties named in a contract sign it and others do not, in the absence of fraud the signers are bound unless there is an agreement or condition imposed at the time of its delivery that it shall not take effect as to any unless all the named parties execute the instrument. *Schlosberg v. Shannon & Luchs Co., et al.*, D. C. *Mun.App.*, 53 *A.2d* 722; *Bank of United States v. Chemical Bank & Trust Co.*, 140 *Misc.* 394, 246 *N.Y.S.* 595; *Dillon v. Anderson*, 43 *N.Y.* 231; 30 *C.J.S., Escrows*, § 18, *page* 1223; see also *Deputy & Co. v. Hastings*, 2 *W.W.Harr.* (32 *Del.*) 345, 123 *A.* 33. But such an understanding or condition imposed by any signer on the delivery of the instrument

must be shown by clear and convincing proof. 30 *C.J.S.*, *Escrows*, § 18, *page* 1222; 16 *Amer. Jur.* 650, 663.

If it could be said that the evidence would support such a contention by any of the complainants, the bill is not based on that ground. It only alleges that the 1946 agreement was not binding because "it was not entered into by all of the children of the said William Gouverneur Ramsay, and said agreement to have any binding force and effect required all of said children to enter into it." There is no charge that there was a collateral understanding or condition imposed at the time of its delivery that the signatures of the complainants would not be effective unless others executed the instrument.

The question raised has been determined against the complainants, and no statements made by Mrs. Joseph G. Ramsay to any of them that the signatures of all were necessary for the contract to have any value can affect the conclusion reached. See *Colvocoresses v. W. S. Wasser-Co., supra; Foreman's Systems v. Milk Dealers' Crate Corp.*, 13 *Del.Ch.* 351, 120 *A.* 358.

A declaratory judgment will be entered against the complainants in accordance with this opinion.