### YOUNG *v.* WALLACE.

1. INDEMNITY—CONTRACTS—CONSIDERATION.
   Plaintiff's purchase of stock and retention thereof for period of 6 months per agreement with defendant was sufficient consideration for latter's agreement to guarantee plaintiff against loss, hence defendant may not claim there was a failure of consideration.

2. SAME—ADDITIONAL GUARANTORS.
   In action for breach of guarantee against loss, evidence *held,* to indicate that defendant personally was guarantor and that corporation which he apparently controlled was, at most, an additional, rather than a substitute, guarantor.

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur, Guaranty, § 51.
[5] 3 Am Jur, Appeal and Error, § 823.

3. CONTRACTS—SEVERAL-PARTY CONTRACT—SIGNATURES.

A signatory party to a several-party contract has the burden of showing he was not to be bound until the instrument had been executed by all those named therein, when the contract does not indicate otherwise on its face or by its terms.

4. SAME—INCHOATE CONTRACT—INDEMNITY—SIGNATURE OF THIRD PARTY.

Agreement, signed by plaintiff and defendant, whereby latter guaranteed former against loss if plaintiff would purchase a given quantity of certain stock and hold it for 6 months, which contained nothing to indicate that it was not to become effective until all parties, including brokerage house through which stock was purchased on margin, was not inchoate as to defendant because not signed by such third party.

5. NEW TRIAL—INDEMNITY—QUESTIONS FOR TRIER OF FACTS.

New trial is ordered in action for breach of guarantee against loss, where trial court was in error in finding contract sued on was inchoate and other questions of fact were not ruled upon under the circumstances.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 6, 1950. (Docket No. 3, Calendar No. 44,480.)   Decided April 3, 1950.   Rehearing denied May 18, 1950.

Assumpsit by Leonard A. Young against Alfred W. Wallace for money due under written contract. Judgment for defendant. Plaintiff appeals. Ola Young, guardian of Leonard A. Young, mental incompetent, substituted as party plaintiff. Reversed and remanded for new trial.

*Cook, Beake, Miller, Wrock & Cross,* for plaintiff.

*Sempliner, Dewey & Stanton* (*David H. Crowley,* of counsel), for defendant.

BUTZEL, J.   Leonard A. Young brought suit against Alfred W. Wallace for breach of a guaranty contained in a written contract duly signed by both parties.   The trial court, sitting without jury, held the agreement incomplete and ineffectual because it

was not executed by Otis & Company, a New York brokerage house, named as third party in the instrument. An appeal was taken from the judgment and the denial of plaintiff's motion for a new trial.

In 1927, the parties, who were friends, were prominent Detroit executives. Plaintiff was the head of a large manufacturing corporation and defendant was president, manager and a large stockholder of Wallace & Company, a Delaware corporation, engaged in the stock brokerage business. It is not entirely clear from the record whether it was at this time that defendant owned 75 per cent. of the capital stock of Wallace & Company, but he apparently controlled the company. In testifying he frequently related company activities in the first person singular as if he were the company.

The transactions that resulted in the present litigation occurred some 20 years ago but the statute of limitations was tolled. Some years after the transaction occurred, plaintiff became very ill and as a result the trial was postponed from time to time. At the time of the trial plaintiff was unable to attend because he was very sick and hospitalized. To guard against defendant having a large part of his own testimony excluded in the event of plaintiff's possible demise before trial on the ground that much of it would have been equally within the knowledge of deceased, defendant had his deposition taken and it was introduced at the trial. Defendant also further testified at the trial when called as an adverse witness by plaintiff's counsel. Subsequent to the trial, plaintiff was adjudicated a mentally-incompetent person and a guardian was appointed for him.

Plaintiff made out his case largely through documentary evidence and the testimony of attorneys and others. A. W. Wallace was the sole defense witness. Making due allowances for the long period of time that elapsed from the occurrence of the events

that preceded the litigation, defendant seemed to be able to recall facts that supported his claims but otherwise often could not remember and was evasive in his replies. Parts of his testimony were conflicting and contradictory.

Wallace & Company owned a large majority of shares of stock in a golf products company, named after a nationally known golfer and engaged in the manufacture and sale of golf balls and other equipment used in that game. Wallace & Company sold this stock to plaintiff on May 5, 1927. Towards the end of the same year the golf products company went into bankruptcy. Plaintiff claimed that he had purchased the stock through the fraudulent representations of defendant's agent.

In August, 1929, plaintiff and defendant met on the private yacht of a mutual friend and according to the testimony on behalf of defendant the plaintiff charged the defendant with fraud in the sale of the stock and asked him to recompense plaintiff for his loss. Defendant testified that at this meeting no charge of fraud was made. At that time the New York stock market evidently was attractive to investors and speculators. According to plaintiff's claim, the recovery of his loss in the golf products company was the subject of the conversation. Defendant was enthusiastic about the prospects of Atlantic Refining Company stock appreciating in value. Both parties agreed that plaintiff should purchase 5,000 shares of this issue in the expectation of realizing a large profit and thus recouping his loss. Defendant claimed that plaintiff promised to take care of the minority stockholders in the golf products company and that the agreement was made in order to enable him to do so.

Whatever may have been the motive, the parties entered into a contract which provided that plaintiff, in accordance with defendant's recommendation,

would purchase through Otis & Company at the market price, 5,000 shares of Atlantic Refining Company stock, which plaintiff was to hold for 6 months if he so desired, and if so held defendant would guarantee him against loss and plaintiff, on the other hand, would be entitled to the profits, if any. The break in the stock market that preceded the panic occurred shortly thereafter. Plaintiff sustained a very heavy loss so that there were no profits from which he possibly could have either recouped his previous loss or taken care of the minority stockholders of the golf products company. Defendant cannot claim that there was failure of consideration. The purchase and retention of the stock for the agreed period was of itself sufficient consideration. See *Plastray Corp.* v. *Cole,* 324 Mich 433 (8 ALR2d 1199); *Arctic Dairy Co.* v. *Winans,* 267 Mich 80 (94 ALR 334); 1 Restatement, Contracts, § 90.

Plaintiff purchased the 5,000 shares of stock on margin through Otis & Company on August 21, 1927, paying $105,000 on account. The brokerage house retained the stock as security for the unpaid balance of the $346,762.50 purchase price. Notwithstanding defendant's testimony to the contrary, the customer's man who handled the transaction for the Detroit office of Otis & Company, his employer, testified that plaintiff and defendant each spoke to him over the telephone during the conversation in which the order for the stock was placed. He further stated that both parties, in instructing the purchase to be made without delay, informed him that they had entered into an agreement in regard to it which they would later reduce to writing, as there was not sufficient time to do so that day.

Very shortly thereafter plaintiff's attorney drafted a contract, the preamble clauses of which stated that the purpose of the agreement was to attempt

to recompense plaintiff for his loss through false representations that defendant's agent had made in the sale of the golf products company stock. Defendant refused to sign. The testimony is conflicting as to whether the preamble was the sole objection.

A contract was finally agreed upon and executed on September 3, 1929. Plaintiff was named as party of the first part, defendant as party of the second part, and Otis & Company as party of the third part. The preamble clause states that party of the first part had purchased 5,000 shares of Atlantic Refining Company stock *"upon the recommendation and oral guarantee"* of second party and that *first two parties* were *"desirous of perpetuating in writing the said oral guarantee so made by said party of the second part."* (Italics supplied.) The first paragraph that follows recites the purchase of the stock through Otis & Company; states in detail the cost of the 5,000 shares; and contains a provision that Otis & Company acknowledged the receipt from Young of the customary deposit for the margin account. Paragraph 2 is as follows:

"The said party of the second part hereby agrees, undertakes and guarantees unto the said party of the first part, his heirs, executors, administrators, but not his assigns, as follows:

"(a) That if the said party of the first part shall hold said 5,000 shares of stock for a period of 6 months from and after the date hereof, and if at the expiration of said 6 months' period, the market price of said common stock, as indicated by the New York Stock Exchange, be less than the average total cost thereof to said party of the first part, to then and in that event forthwith pay or cause to be paid to said party of the first part the total amount of such loss.

"(b) To repay to said party of the first part interest at the rate of 6 per cent. per annum against all moneys so deposited and/or presently to be de-

posited by him with the said party of the third part to margin the purchase of said shares of stock, against which interest so accrued, the said party of the second part shall be credited with all dividends paid upon said shares of stock, said interest to be payable only in the event that said party of the first part sustains a loss on said shares of stock so purchased.

"(c) That said party of the first part shall have the right and privilege and shall be entitled to any and all profits which may accrue and be realized when and if said 5,000 shares of stock are sold."

Paragraph 3 provides how profits and losses are to be determined by first and second parties. Paragraph 4 contains a reservation permitting party of the first part to sell the stock prior to the expiration of 6 months and thus terminate the agreement. ·The following paragraph obligates party of the first part to make additional deposits to protect the margin account, if and when so required by Otis & Company, unless first party terminated the agreement as provided for in paragraph 4. The paragraph next following contains a provision that gives second party the right to purchase the stock held by first party at the end of 6 months. The final paragraph of the contract is as follows:

"The party of the third part hereby expressly agrees that the sums paid in by the party of the first part to it for margin account on said stock shall be considered as a trust fund held by the said third party in trust for the said first party, and that the stock or the said first party's interest in said stock and all profits from time to time accumulated on said stock shall be considered held in trust for said party of the first part and neither the cash paid in nor the said party of the first part's interest in the stock or the profits shall at any time be considered as the property of the said party of the second part and/or

the said party of the third part or either of them or the property of anyone else."

The contract was duly signed by plaintiff and defendant. It was never signed by Otis & Company whose obligations under it, if signed by them, appeared only in the final paragraph, did not change the agreement between first and second parties one iota, and were solely for the further protection of plaintiff.

We therefore have a written contract in which the verbal agreements theretofore made have been merged. Defendant claims, however, that notwithstanding the execution of the agreement by first and second parties it remained inchoate and was not to become effective until signed by Otis & Company. If there were some collateral agreements of an indefinite nature, they involved Wallace & Company. Undoubtedly there was some talk about Wallace & Company becoming obligated but defendant's claim is not that the contract was inchoate through the failure of Wallace & Company to sign but because Otis & Company did not execute the agreement. The situation is analogous to that where an escrow agent had been designated but had refused to be bound as a signatory party to the contract, although the other parties had fully carried out the contract.

On the same date that the contract was signed Wallace & Company sent a letter to Otis & Company stating that the Leonard A. Young special account for this transaction was guaranteed and authorizing the transfer of the stock to the Wallace & Company special account at the end of the 6-month period, further authorizing Otis & Company that in the event Wallace & Company closed their account during the term of the guaranty Otis & Company should retain sufficient funds to properly margin the Young special account on the entire purchase, based at cur-

rent market prices.   A copy of these instructions was sent to plaintiff by the Otis & Company representative.

Defendant evidently regarded the contract as binding for towards the end of the 6-month period negotiations for an extension of the agreement were entered into.   In his testimony defendant unequivocally stated that he never discussed an extension with plaintiff's attorney but on cross-examination he admitted there had been discussions and that at that time he gave plaintiff's attorney a full disclosure of his personal assets.   The attorney testified that an oral agreement had been reached in regard to the extension but that when reduced to writing defendant refused to sign it.   It is, however, significant that shortly thereafter defendant instructed Otis & Company to make available to plaintiff or his attorney reports on the status of the Wallace & Company special account.   He further instructed Otis & Company that no funds, securities or proceeds were to be withdrawn from the Wallace & Company special account without the written consent of plaintiff or his attorney.

Defendant testified that Wallace & Company and not he personally was the guarantor, but the contract contains no indication that he was acting in any other capacity than personally, and other evidence indicates that if Wallace & Company was a guarantor, it was at most an additional one rather than a substitute.

When a several party contract does not indicate otherwise on its face or by its terms, a signatory party has the burden of showing that he was not to be bound until the instrument had been executed by all those named.   *Palman* v. *Reynolds,* 310 Mich 35. See the authorities collected in *Stabler* v. *Ramsay,* Del Ch (62 A2d 464), and *Ely* v. *Phillips,* 89 W Va 580 (109 SE 808).

The instant agreement contains nothing indicating that it was not to become effective until all parties joined in its execution. The third party's refusal to sign did not impair the fulfillment of its terms. The defendant has not sustained his burden of showing that the instrument was inchoate until signed by Otis & Company and the evidence in the record clearly preponderates to the contrary.

The record presents some other questions of fact that were not ruled upon under the circumstances. Therefore the cause is remanded for a new trial. Plaintiff is awarded costs in both courts.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.