**Dwight Lyman STUART, Respondent Below, Appellant,**

v.

**WILMINGTON TRUST COMPANY, Trustee u/a Elbridge A. Stuart dated January 30, 1934 and Jane S. Whitman, Petitioners Below, Appellees,**

and

**Dwight Lyman Stuart, Jr., William Woodward Stuart, Bruce Fullerton Stuart, Gregory Morgan Stuart and the unborn and unascertained issue of Dwight Lyman Stuart, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: November 14, 1983.

Decided: March 2, 1984.

Richard R. Cooch (argued), and Robert W. Crowe of Cooch & Taylor, Wilmington, for respondent below, appellant.

Thomas P. Sweeney (argued), and Richard G. Bacon of Richards, Layton & Finger, Wilmington, for petitioners below, appellees.

Clark W. Furlow (argued); and Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for defendants below, appellees.

Before McNEILLY, MOORE and CHRISTIE, JJ.

McNEILLY, Justice.

This is an appeal from the Final Order and Judgment rendered by the Chancellor in response to a Petition for Instructions filed by Wilmington Trust Company, as Trustee, and Jane S. Whitman, as one of two trust advisors of a trust established under an agreement between Elbridge A. Stuart and Wilmington Trust Company. The appellant, Dwight Lyman Stuart, is the other trust advisor and a beneficiary of the trust who has requested and consented to the invasion of principal in the amount of 4.5 million dollars for the purchase of a jet plane for his personal "benefit". The Chancellor held that the word "benefit" as it appears in the Trust does not authorize

an invasion of principal where it does not appear that an invasion is necessary to provide properly for the support, maintenance, benefit and education of a beneficiary, and further that Dwight Lyman Stuart is disqualified as a fiduciary by virtue of his self interest from acting and voting as advisor with respect to an invasion of principal for his own benefit. We agree and affirm, although for future guidance we would modify the strict implication of the Chancellor's ruling to the limited extent of suggesting that there may be other circumstances, not here apparent, whereby a trust advisor and beneficiary may not be disqualified by virtue of his self interest from acting and voting in his fiduciary capacity as advisor with respect to an invasion of principal for his own benefit. Since such a modification is not pertinent to this decision, we leave further discussion of that to another day involving different facts and circumstances.

I

The Trust here involved finds its roots in 1899 when Elbridge A. Stuart and Thomas Yerka founded a company known as Pacific Coast Condensed Milk. In 1901, Elbridge A. Stuart purchased Mr. Yerka's interest in the company and changed its name to Carnation Company. Mr. Stuart later established the E.A. Stuart Company as a corporation organized for the purpose of holding some of the Stuart family's Carnation Company stock. As of January 1, 1934 there were 16,000 shares of common stock of E.A. Stuart Company outstanding, 8,498 shares of which were owned by Elbridge A. Stuart.

On January 30, 1934 Elbridge A. Stuart created a revocable trust by agreement with Wilmington Trust Company. 8400 shares of E.A. Stuart Company were transferred to the Trust on April 16, 1934 thereby giving the Trust the controlling interest in E.A. Stuart Company, and through it, the Carnation Company.

Over the years Elbridge A. Stuart caused a number of E.A. Stuart Company shares to be transferred from the Trust to other family trusts administered by Wilmington Trust Company. By February 20, 1943, when the January 30, 1934 Trust Agreement was amended, the Trust no longer controlled a majority of E.A. Stuart Company although it was one of several trusts established by Elbridge A. Stuart and his family which together held more than three-fourths of the outstanding stock of the E.A. Stuart Company.

The Trust as supplemented by the 1942 agreement provided for the payment of all income to Elbridge A. Stuart during his lifetime. At his death, on January 14, 1944, a portion of the Trust was transferred to a family foundation and the remainder was divided into three residuary trusts, each bearing the name of one of Elbridge A. Stuart's three grandsons. It is one of the three residuary trusts which constitutes the specific trust fund in issue here and which we will hereinafter refer to when necessary as the Dwight Lyman Stuart Trust.

During the lifetime of Elbridge A. Stuart's son, Elbridge Hadley Stuart, the income of each of the three residuary trusts was to be accumulated and added to the Trust principal out of which a lifetime annuity of $36,000 per year was to be paid to Elbridge Hadley Stuart. Upon the death of Elbridge Hadley Stuart, which occurred September 16, 1972, the Wilmington Trust Company, as trustee of the Dwight Lyman Stuart Trust, was directed to hold the trust fund in accordance with the following terms:

"[Trustee] shall pay over the net income from each said trust fund to such grandson for whom and in whose name the trust was created, at such times and in such amounts as the Trustee and Advisers may in their uncontrolled discretion determine; provided however, that such income so payable to any grandson of the Donor shall not exceed the sum of Three Thousand Dollars ($3,000.00) per year prior to his attaining the age of thirty-five years, and shall be applied to the

support, maintenance, benefit and education of such grandson in such manner and to such extent as the Trustee with the approval of the Advisers to the Trustee for that trust may determine and the balance of any such annual income not so applied shall be accumulated and added to the principal of each such fund." (Paragraph FOURTH)

Dwight Lyman Stuart was over the age of thirty-five at the time of Elbridge Hadley Stuart's death and all the income has been paid to him from that time to date. Upon the death of Dwight Lyman Stuart, the Wilmington Trust Company, as trustee, is to pay the principal of the Dwight Lyman Stuart Trust "in equal parts, share and share alike, to the then living issue (of Dwight Lyman Stuart) per stirpes and not per capita." (Paragraph Fourth)

Paragraph Fifth of the Trust provides in its pertinent part as follows:

"If during the continuance of any trust herein provided for the net income currently payable unto or for the benefit of any beneficiary, together with his or her income from other sources, should in the judgment of the Trustee thereof and its advisers, be insufficient to provide properly for the support, maintenance, benefit and education of such beneficiary and his or her dependants, said Trustee is authorized and empowered, with the approval of the Advisers to the Trustee, in their sole discretion, to pay over unto or for the benefit of such beneficiaries so much of the principal of any part or the whole of any trust estate to which such beneficiary may then be presumptively entitled, or from which such beneficiary may then be receiving the income, as may from time to time be required to make up such deficiency in income."

As part of the overall trust scheme under the Trust Agreement as amended February 20, 1942 Elbridge A. Stuart established a trust advisory system. During his lifetime, Elbridge A. Stuart was the sole trust advisor and his directions were binding upon the trustee. Upon his death, a two member board of advisors was established for each of the three residuary trusts, consisting initially of Elbridge Hadley Stuart and the grandson for which the trust was named. At least one of the two advisors must consent to any action to be taken by the Trustee under paragraph Thirteen of the amended agreement as follows:

"In the management of this trust during the lifetime of the Donor and of each separate trust created under authority of paragraph FOURTH and the transaction of any business pertaining thereto, the concurrence of the Trustee and one of the Advisers to the Trustee shall be required, and the act of any two, one of which must be the Trustee, shall be as effective for every purpose as the act of all; provided however, that no action shall be considered or completed unless notice thereof has been given to both Advisers to the Trustee and their individual opinion upon such action secured."

As to the Dwight Lyman Stuart Trust, the original advisors following the death of Elbridge A. Stuart were Elbridge Hadley Stuart and Dwight Lyman Stuart. Dwight Lyman Stuart continues to act and Jane S. Whitman was appointed April 6, 1982, to fill the position of the second advisor vacated upon the resignation of H.E. Olson who had acted as advisor with Dwight Lyman Stuart following the death of Elbridge Hadley Stuart. She has not consented to the invasion of principal requested and is a petitioner with the trustee, Wilmington Trust Company, seeking advice.

The 1942 Amended Trust Agreement provided that upon the death of Elbridge Hadley Stuart his position as advisor to the three residuary trusts was to be filled from a list of persons designated. As to the other advisors' positions, it is provided that if one of the three grandsons dies he is to be succeeded by his eldest living brother, or if none are living, by the eldest qualified male descendent of Elbridge Hadley Stuart's three sons. Further, no two grandsons or lineal descendent of Elbridge Hadley Stuart may be on the same board at

the same time. Consequently, the trust advisor system was designed so that following Elbridge Hadley Stuart's death each two member board of advisors would include a lineal male descendent of Elbridge Hadley Stuart and a non-family member.

It is also noteworthy that Elbridge A. Stuart reserved the right to vote the E.A. Stuart Company stock and any Carnation Company stock deposited in the Trust. After his death the right to vote the E.A. Stuart Company stock and the Carnation Company stock became vested in Elbridge Hadley Stuart as long as he served as trust advisor, passing thereafter to the lineal male descendent advisor.

In addition, in order to continue his family's influence upon the Carnation Company, Elbridge A. Stuart directed the Trustee and the advisors to cooperate in every instance to the end that none of the Trust assets, especially the holdings in the Carnation Company and E.A. Stuart Company should be sacrificed for the purpose of making any of the payments provided for in the trust agreement. The trust agreement empowers the trustee to borrow money rather than to sell the stock in these companies, and recommends that "any Trustee or its Advisors shall, whenever the necessity arises, first exhaust the possibility of borrowing such necessary sums from E.A. Stuart Company to the extent of that Company's capacity to provide funds before securing such funds elsewhere." The settlor also instructed the Trustee to increase the Trust's holdings by treating all dividends payable in stock of either corporation as additions to principal rather than as income.

It appears obvious, therefore, that the dominating purpose and function of the Trust, aside from the benefit of the beneficiaries, was to preserve the position of the Stuart family with respect to the affairs of the Carnation Company.

## II

In making his request and consenting to the distribution to him of principal in excess of income under paragraph Fifth of the Trust, Dwight Lyman Stuart relies upon his interpretation of that provision. Neither the amount of the requested invasion nor the amount of the Trust's principal value is in issue. The basic question here, very simply put, is whether it was Elbridge A. Stuart's intention to permit, under paragraph Fifth of the Amended Trust Agreement, the personal "benefit", notwithstanding any need related to support, maintenance and education, to constitute a justifiable reason to invade principal.

It is Dwight Lyman Stuart's contention that the word "benefit" established an independent standard for the invasion of principal. It is his argument that the word "and" as used in the critical phrase "support, maintenance, benefit and education" must be construed to be read in the disjunctive "or" in order for the phrase to make sense. He contends that to construe "and" otherwise than "or" would frustrate the intent of his grandfather, Elbridge A. Stuart, and create an anomaly whereby an income beneficiary could be destitute, could have completed his education and thus be unable to invade principal because of lack of need of funds for education. In other words, he argues that to give a literal conjunctive construction to the phrase "support, maintenance, benefit and education" would mean that the Trustee would have no discretion to invade principal unless there was a need for exceeding income for all four purposes.

This argument standing alone is not illogical and this rule of construction is supported by *Jackson v. Schultz*, Del.Ch., 151 A.2d 284 (1959) if to so construe the word "and" is necessary to carry out the intent of the maker of the instrument in issue. The applicable rule, however, is that "and" is not to be construed to mean "or" unless the language of the instrument indicates an intended construction otherwise than written. *Cann v. VanSant*, Del.Ch., 11 A.2d 388 (1940), *aff'd per curiam, subnom, Frame v. Cann*, Del.Supr., 16 A.2d 248 (1940). That intention must be gleaned

from the facts and circumstances known to the Donor existing at the time of the execution of the trust agreement. *Wilmington Trust Company v. Wilmington Trust Company*, Del.Ch., 15 A.2d 153 (1940) *aff'd*, Del.Supr., 24 A.2d 309 (1942); *Bird v. Wilmington Society of Fine Arts*, Del.Supr., 43 A.2d 476 (1945); *Delaware Trust Company v. Delaware Trust Company*, Del. Ch., 91 A.2d 44 (1952).

■ Turning to the circumstances surrounding the execution of the 1934 agreement and its 1942 supplemental and amended version, it must be remembered that Elbridge A. Stuart funded the trust with stock in the E.A. Stuart Company which together with other family trusts, controlled the Carnation Company. The power to vote that stock was vested until his death in Elbridge A. Stuart, and then in his lineal descendents serving as trust advisors under strict instructions to avoid selling stock of either E.A. Stuart Company or the Carnation Company. Additionally, the advisors were directed to retain any stock dividends of those two companies as trust corpus. Obviously that evidences an intent to retain the family influence in the Carnation Company as long as possible and to construe the power to invade principal narrowly.

If the words "support, maintenance, benefit and education" were construed to create independent standards, as Dwight Lyman Stuart would have this Court do, the principal would be subject to invasion at the very whim or desire of an income beneficiary, restricted only to the discretion of the Trustee. Such a construction would render the Trust corpus vulnerable to disposition in order to "provide properly" as "required" under Item Fifth for the unfettered "benefit" of the requesting and consenting income beneficiary. Clearly that is contrary to Elbridge A. Stuart's intention.

\* \* \*

AFFIRMED.