## FRANCES R. JONES

*v.*

## WILLIAM H. KNAUSS and WILLIAM H. FAIRCHILD.

1. A trustee who, intentionally, without mistake or accident, destroys the written evidence of his trust, places himself in a position where the court is bound to make all reasonable presumptions against him.

2. All things may be presumed against a wrong-doer.

3. If a party to a suit is proved to have destroyed a written instrument, a presumption arises that, if the truth had appeared, it would have shown that the paper contained something prejudicial to his interest, and, in such a case, slight evidence of the contents of the paper will usually be sufficient.

4. Evidence of oral admissions and declarations belongs to a class of proofs which should be received with great caution.

5. A material and controlling fact which is clearly and fully averred in the bill, and not denied or alluded to in the answer, must be taken as confessed.

On final hearing on bill and answer, and proofs taken orally before the vice-chancellor.

*Mr. Frederick H. Pilch*, for complainant.

*Mr. John A. Cobb*, for defendants.

THE VICE-CHANCELLOR.

The principal object of this suit is to enforce an express trust. The subject of the trust is a mortgage. The complainant and her husband, on the 31st of March, 1874, conveyed a house and lot, belonging to the husband, to one Klan Duyn, for $7,000. In part payment of the purchase-money, Mr. Duyn gave a mortgage to the defendant Knauss, for $3,000, payable three years after date, and bearing interest from date. The mortgage was made to the defendant, as trustee of the complainant and her husband. A writing, stating the terms of the trust, was executed in

triplicate by the complainant and her husband and the defendant, on the day the mortgage was executed, and one copy delivered to each of the parties. These have since been destroyed by the defendant.

The important question of the case is, What were the terms of the trust? By his answer, the defendant denied that he was, or ever had been, trustee for the complainant; but, in his evidence, he admitted that a declaration of trust had been executed in triplicate, as stated by the complainant, and, also, that it contained a trust in her favor. The complainant says that the trust agreement first required her to assume and pay a debt of $500 which her husband owed to her sister; that it then required the defendant to pay to her husband all interest which accrued on the principal of the mortgage up to the time it fell due, and that the principal, on the maturity of the mortgage, should be paid to her; while the defendant says that the agreement provided that the interest, until the maturity of the mortgage, should be paid to the husband, and that, when the principal fell due, $1,000 of it should be paid to the complainant, and the balance to her husband. The dispute is as to the amount of the principal the complainant is entitled to, according to the terms of the trust.

All three copies of the declaration of trust were destroyed by the defendant Knauss. That is undisputed. Unless he has justified his conduct, in this respect, by a satisfactory explanation, his act must be regarded as a wrongful attempt to defeat the complainant's right by destroying the evidence whereon it rested. A trustee who, voluntarily, without mistake or accident, destroys the written evidence of his duty and liability, commits the most flagrant betrayal of his trust that it is possible for him to perpetrate. This is the defendant's justification: He says the complainant was paid $500 on account of the $1,000, shortly after the papers were executed, and that she endorsed a receipt for that sum on her copy of the declaration of trust; that an additional $500 was paid to her, in his office, by her husband, in June.

1874, when she gave up her copy of the declaration of trust for cancellation, and all three were then destroyed by him, with the consent of all parties. He further says, the reason all three were destroyed was, because the trust had been executed.

The complainant disputes the truth of all the material parts of this statement. She admits the payment of the sum of $500, but says that is all she has ever received. She denies, with great positiveness, that she surrendered her copy of the declaration of trust for cancellation, or that she consented to its destruction, or that she had the slightest suspicion, when she let the defendant have it, that he intended to destroy it. She further says that the defendant obtained it of her in June, 1874, under a representation that he wanted to copy it; and that, although she afterwards applied to him several times for it, he kept it, under various pretences, until, at last, he told her that he had given it to her husband, or destroyed it.

The evidence shows quite conclusively that the complainant repeatedly demanded the surrender of this paper. She swears positively to several such demands, and gives the circumstances attending them, in detail. The defendant admits that, on one occasion, the complainant notified him that if he did not get her papers for her, she would take legal proceedings against him. His clerk, in answer to a question requiring him to state whether the complainant had not asked for the surrender of her copy of the declaration of trust, said, that the complainant came to the defendant's office, on one occasion, in the defendant's absence, and made a " terrible time," but he did not know what it was about. He says, " She talked as if the defendant was trying to keep out of her way." It is impossible to adopt any view of the evidence on this point which does not leave the fact that the complainant repeatedly asked for the return of her copy of the declaration of trust, practically undisputed; and yet, it is not pretended that the defendant met any of these demands by what would have been an almost irrepres-

sible answer, had it been true that she had been paid in full and had surrendered her paper for cancellation, and it had been destroyed, as he says it was, by him, in her presence. Under the facts, as he states them, her claim was most audacious, and, unless he was insensible to the most common emotions of our nature, he could scarcely have avoided meeting some one of the repetitions of her demand by a statement of the truth so blunt and indignant that she would not have ventured upon another repetition. The natural expression of his astonishment and indignation would have been, " Why, what do you mean? You know you have been paid—that you gave up your paper, and that I destroyed it in your presence; now, why do you come here and ask me for it?" So far as the evidence shows, nothing of the kind was ever said; nor is it even claimed that the defendant ever met any of the complainant's demands by an assertion that she had been paid, or that she had surrendered her paper for cancellation.

But, suppose we take it to be true that the complainant has been paid, was there anything in that fact that made the destruction of the papers necessary or proper, or which would have been likely to induce the complainant's husband to consent to their destruction? He had not been paid; on the contrary, his interest in the mortgage had been increased. Instead of being entitled to $2,000 of the principal, as he was under the original division of interests, he is now entitled to the whole. Is it likely that he would have consented, under this state of affairs, that all written evidence of his right should be destroyed, in the absence of the least necessity for its destruction? Is it not much more reasonable to believe that, if he had anticipated the payment of the sum his wife was entitled to, by nearly three years, that the arrangement which would have naturally suggested itself to the minds of the ·parties, would have been an assignment of her interest to him? or, if the destruction of the papers had been suggested as a proper step under the circumstances, would not the husband's self-

interest have prompted him to ask for an assignment of the bond and mortgage? He was now entitled to both principal and interest, and why should he not have the papers? Or, if the defendant wanted to retain the bond and mortgage, and it had been thought advisable to destroy the evidence of the trust, so far as it had been executed, would not the good sense of all the parties have said at once, if an honest arrangement was all that had been desired, that it was only necessary to destroy the complainant's copy? That course would certainly have better harmonized with the transaction, as the defendant describes it. It would have taken from the complainant the written evidence of her right, but left her husband in possession of his. Perhaps the destruction of the evidence of the trust, so far as the trust had' been performed, might, under some circumstances, be excused on the ground of stupidity, but that is the extreme limit to which such an excuse can be carried. After that, destruction meant fraud.

The bond and mortgage were never assigned or passed over to the husband. He died in October, 1875, and although the defendant says, by a payment made in June, 1874, the husband became entitled to the whole sum secured by the mortgage, and he considered his duty as trustee so fully performed that it was proper to destroy the written evidence of the trust, yet it appears he continued to hold the trust property and made no effort to pass it over to the person entitled to it. Not only so, but, after the death of the person entitled to it, he administered upon his estate, withheld the mortgage from his inventory, and afterwards assigned it to his brother-in-law in payment for sixteen hundred acres of land situate in the state of Missouri.

Two other facts must be mentioned in this connection. The defendant, on the 1st of August, 1874, signed a waiver of priority of his mortgage over one subsequently given, in which he described himself as "trustee of Abraham Jones and wife." This description of himself was utterly inconsistent with the facts then existing, as he now states them,

but perfectly consistent with those the complainant says then existed. If the complainant had been fully paid in the June previous, and all trust relations had then ceased to exist, and the evidence of the trust had been destroyed, it is quite improbable that the defendant would have suffered himself to be described in a paper of this character as her trustee.

Again, a difficulty arose between the complainant and her husband, in the latter part of July or early in August, 1874, which resulted in a suit for divorce against the complainant, on a charge of adultery. On the 12th of August, 1874, the husband served a written notice on the defendant, forbidding him to deliver to the complainant any papers in his possession. It is not pretended that the defendant ever had in his possession any paper belonging to the complainant, of which she sought the possession, except her copy of the declaration of trust. The notice would, therefore, appear to have been objectless, unless it was intended to impound this paper. The complainant was, as the evidence shows, endeavoring at this time to compel the defendant to surrender it. The trust, so far as it benefited her, had been created to induce her to join her husband in the deed made for the mortgaged premises. In view of the suit for divorce, it was quite natural, if the husband knew the complainant's copy of the declaration of trust was in the defendant's possession, that he should have attempted to keep it there; but if he knew it had been destroyed, it is impossible to assign a rational purpose to his notice.

The prominent circumstances of the case—those which may be safely relied on to guide the way to the truth—so strongly corroborate the truth of the complainant's evidence as to leave no doubt in my mind that the declarations of trust were destroyed without her consent or knowledge. They show, too, I think, quite clearly, that they were destroyed for an improper purpose; at least, their destruction was not necessary to the accomplishment of any honest or useful purpose. The reason the defendant assigns for

Jones v. Knauss.

his act, is utterly insufficient and improbable; just as incredible as it would be for him to attempt to justify or excuse the destruction of the mortgage, by saying he thought it was proper to destroy it, because part of the mortgage debt had been paid.

The defendant's act, in view of the facts, can receive but one interpretation. On his own showing, it was admittedly wrongful against the complainant's husband, and presumably so against the complainant. His position is one where he is liable to the most unfavorable presumptions. He has unquestionably betrayed his trust, and the court is bound to apply to him the maxim *in odium spoliatoris omnia præsumuntur*. If a person is proved to have destroyed a written instrument, a presumption arises that, if the truth had appeared, it would have been against his interest, and that his conduct is attributable to his knowledge of this circumstance, and, accordingly, slight evidence of the contents of the instrument will usually, in such a case, be sufficient. *Broom's Max. 940.* Independent, however, of the legal presumption, the case is decidedly with the complainant on the question, What were the contents of these papers? Four witnesses swear that the contents of the complainant's copy were substantially what she says they were. One of them read it twice; another read it once and also heard it read; another read it at the complainant's request, just after it was delivered to her, and when she was greatly delighted with her good fortune in getting it, and the fourth heard it read by the person who swears he read it twice. Three of them were related to the complainant, and, therefore, had such an interest in the paper as would have been likely to induce them to read it attentively and discuss its contents. The other read it under circumstances that could scarcely have failed to impress its contents upon her memory. She says the complainant came to her very much pleased with the paper, and wanted her to read it. She did not desire to do so, and became slightly piqued because the complainant insisted upon taking her time; but she finally read it.

Jones *v.* Knauss.

These four witnesses all say that the agreement contained a stipulation that the complainant should pay a debt of $500, which her husband owed to her sister. It is not disputed that the complainant paid this debt. As already stated, the defendant says that the agreement provided for the payment of $1,000 to the complainant. In this, he is corroborated by his clerk, who swears that he wrote all three copies of the agreement. But neither remembers the stipulation on the part of the complainant, at least neither mentions it in repeating the contents of the agreement. The fact that the complainant made the payment is, in my judgment, a strong corroboration of the accuracy of her recollection and that of her witnesses; while the fact that neither the defendant nor his witness mentions this stipulation in attempting to repeat the contents of the agreement, must be regarded as very cogent evidence that their recollection has become so obscured as to be untrustworthy.

The defendant has also attempted to show that his recital of the contents of the agreement is correct, by proof of admissions alleged to have been made by the complainant. Evidence of this kind must always be received with great caution, and should invariably be subjected to the most rigid scrutiny. Even when it proceeds from the mouth of an honest and disinterested witness, it is liable to much imperfection and error. Sometimes a word misunderstood, or a look or action misrepresented, will produce upon the mind of the hearer an impression so entirely different from that which the speaker intended to convey, that if the statement or admission subsequently becomes the subject of investigation, each party, in consequence of the misunderstanding, will be forced to distrust the integrity of the other. The hearer will believe that the speaker intends, willfully, to deny what he knows he said, and the speaker will believe that the hearer corruptly intends to put words in his mouth that he knows he never uttered. The admissions imputed to the complainant are, first, that she said her interest in the mortgage was $1,000; and, secondly, that

about the 1st of August, 1874, she said that she had been paid in full.   These admissions, it will be observed, stand in sharp and decided conflict with what have already been declared the undeniable facts of the case.   So true is this, that I find it impossible not to regard the evidence in support of the admissions as the result of mistake or misapprehension.   If we believe the complainant made the last one imputed to her, we must also believe that she made it at the very time she was struggling to wrest her copy of the declaration of trust from the hands of the defendant.   We must also believe that she admitted what the defendant never asserted or insinuated when he was under the almost constant pester of her demands for the return of her paper, namely, that she had been paid.   Moreover, I may say, I am fully satisfied that if the agreement had provided that the complainant should only be paid $1,000, and she had been paid, and had given up her copy of the agreement, the papers never would have been destroyed.   The destruction of the papers, under the circumstances stated, was so unnatural, unreasonable and improbable, that that act cannot be ascribed to an honest purpose, upon any evidence to be found in this case.

My conclusion is, that the complainant, by the terms of the trust, is entitled to the whole principal of the mortgage, less what she admits she has been paid.

As already stated, it appears that the mortgage in controversy was assigned by the defendant to his brother-in-law, in payment for lands in Missouri.   The assignment was made just before this suit was instituted.   The defendant says that he holds these lands subject to the same trusts upon which he held the mortgage.   His deed has not been put in evidence.   Whether the trusts are expressed upon its face or not, does not appear.   Of course, if they were, the assignee, being the grantor of the lands, was chargeable with notice of the terms of the trust.   However, that is unimportant.   If the assignment was not a mere subterfuge (and I think there is strong reason to believe that that was

its true character), still the assignee is in no better position, legally, than if that had been adjudged to be its real nature. The bill distinctly charges that he took the mortgage with full notice of the trust. To this he has made no response whatever. He has even omitted to say whether or not an assignment was made to him, or whether or not he claims any right to, or interest in, the mortgage. He has not offered himself as a witness. That he is not an innocent purchaser, must be considered as admitted. A material and controlling fact, which is clearly and fully averred in the bill, and not denied or alluded to in the answer, must be taken as confessed. *Sanborn* v. *Adair*, *2 Stew. 338 ; Lee .v. Stiger*, *3 Stew. 611*. Besides, there was enough on the face of the papers to put an honest and cautious purchaser on his guard. The bond and mortgage, as they now appear, purport to have been made to "William H. Knauss, in trust for Abraham Jones          ." Immediately following the words "Abraham Jones," four words have been scratched out, so as to remove all traces of the ink, but the scratching has so greatly reduced the thickness or body of the paper that, by holding either the bond or the mortgage against a strong light, there is no difficulty in discerning the length of each of the words effaced, and the character of some of the letters of which they were composed. I have no doubt the words effaced were " and Frances, his wife," and that the papers were originally made to "William H. Knauss, in trust for Abraham Jones and Frances, his wife."

The complainant is entitled to a decree against both defendants, with costs. But $1,000 principal remains due on the mortgage. The defendant Fairchild will be decreed to assign the mortgage to the complainant. The defendant Knauss has collected $2,000 of the principal—$1,000 before this suit was brought, and the other since, and after he had been enjoined. He will be decreed to pay the complainant $1,500, with interest from the time the principal fell due.