J. I. BLAIR REILEY, executor, &c.,

*v.*

CLARA L. FULPER et al.

[Decided November 21st, 1921.]

1. To constitute a valid gift *inter vivos*, the donative intent which must be proven is not a mere general intent or expectation of making a gift, but a specific intent, accompanying the act alleged to constitute delivery, that then and by that act a transfer of ownership by way of gift should be accomplished and completed.

2. Where actual delivery of an article is essential to the completion of a valid gift *inter vivos*, the placing of the article by the donor without the knowledge of the donee in a safe deposit box used by and accessible to both, or either, is not legally sufficient to constitute a valid delivery.

---

On final hearing.

*Mr. Osiris D. McConnell,* for the complainant.

*Mr. William H. Morrow,* for the defendant Clara L. Fulper.

BUCHANAN, V. C.

The bill in this case is filed by complainant as executor and trustee under the will of Joseph E. Fulper, deceased, to determine the ownership of seventy-three shares of the stock of the Washington Water Company. Those facts as to which direct evidence exists are not in dispute; most of them were agreed upon by the parties, and such supplementary testimony as was

offered by them respectively remains uncontradicted. The contest arises on the inferences to be drawn from the admitted or proven facts.

Prior to March 7th, 1919, the decedent was the owner of one hundred and seventy-three shares of the stock of said company, evidenced by a number of certificates in varying and odd amounts. On that date he filled out, on one of the blank forms in the company's transfer book, a formal transfer to his daughter Clara of seventy-three shares of this stock, but failed to sign it.

The company had no written rule or by-laws as to the method of accomplishing the transfer of its shares of stock. It had a transfer book, and usually transferrers executed transfers of their stock therein; but in four other cases prior to this time transfers had been made by surrender of old certificates and issuance of new, without execution of any transfer in the transfer book.

Decedent was at that time (and until his death) the secretary of the water company, and that company in issuing its stock certificates validated them by the signatures of its president and its secretary, the treasurer having nothing to do with the certificates.

On the same day, as secretary of the company, he canceled several certificates which he held (the certificates so canceled aggregating seventy-three shares) and replaced them in the stock certificate book of the company; filled in a new certificate made out to his daughter for seventy-three shares, and at some time thereafter (probably, on the same day) procured it to be signed by the president of the company, and then placed it in his safe deposit box at the bank. When found there after his death it also bore his own signature as secretary of the company. He also, on the same day, made the appropriate entries in the water company's stock ledger, debiting his account with the seventy-three shares and crediting his daughter's account therewith.

There is no evidence of any manual delivery of the certificate by the decedent to the daughter, nor of any statement by him to her in regard to the transfer of this stock to her—her tongue, of course, being tied by the statute. It does appear, however, that she had free access to her father's safe deposit box, and used

8

it, with his knowledge and consent, for the safekeeping of her own valuables.

She saw the certificate on her father's desk on the day it was made out, but before it had been signed by the president of the company. Admittedly, she never saw or knew anything about it further until after the father's death. On the same day on which she saw the incomplete certificate, as above mentioned, she also saw the entries in the stock ledger. She was at that time the assistant secretary of the company and so continued down to the date of her father's death.

On or shortly before July 10th, 1919 (some four months after the incidents of March 7th), the daughter, as assistant secretary of the company, made out a "dividend sheet" (or list of the stockholders, and the number of shares held by each, and the amounts of the respective semi-annual dividend checks to be made out to them), on which she wrote the name of her father, as the owner of the entire one hundred and seventy-three shares, and the name of herself as the owner of only one share (which she had owned for many years). She also made out or filled in all the dividend checks, including one to her father's order for the amount of the dividend on the entire one hundred and seventy-three shares, and one to her own order for the amount of dividend on only one share. It will be borne in mind that she had seen the unexecuted certificate made out to her name, and had seen the entries in the books evidencing the change of ownership on the books. She knew, of course, that the *owner* of stock was the one entitled to receive the dividends on that stock, for she had been for many years the owner of one share of stock in the company and in semi-annual receipt of dividends upon it; and, furthermore, the dividend sheet in question shows that instead of making an exact copy of the dividend sheet of six months earlier, she had made the proper changes thereon in respect to two instances of shares which had been in the interim transferred by one stockholder to another.

There is no evidence as to what, if any, action was taken by either father or daughter in the way of voting upon the shares in question. The minute book of the company shows no record of any stockholders' meeting between March 7th, 1917, and the

death of Mr. Fulper. Nor do the minutes of the stockholders' meetings of which the record does appear, set forth the names of the stockholders present or the number of shares respectively voted by them.

As to testator's intent, in addition to the inferences to be drawn from his conduct, there is the admission in the bill of complaint that the decedent, when he procured the president's signature to the new certificate, stated to the latter that he "proposed transferring that amount of stock to his daughter." There is also the testimony of the bank officer, Groff, that decedent told him, on asking access to his safe deposit box (the date is not definitely fixed), that he was going to transfer some shares to his daughter; and that on the next day he came back to the box again and said that he had done so.

The issue is as to gift *inter vivos.* There is no contention that any consideration was paid. If there was a completed gift of the stock by the testator to his daughter prior to his death, she, of course, became, and still remains, the owner thereof. *Cole* v. *Monkhouse, 50 N. J. Eq. 537.* Otherwise, title remained in the testator and passed at his death to complainant, under the will.

To constitute a perfected or valid gift *inter vivos* it is well settled that three things are requisite—the donative intent by donor, delivery by donor and acceptance by donee.

The intent must be proven; for, of course, a mere delivery does not of itself prove an intent to transfer the ownership of the thing delivered. *Cf. Stokes* v. *Kaufman, 92 N. J. Eq. 554.* The delivery must be proven, for mere intent, however definite and clear, accomplishes no legal result, without action upon or in furtherance of that intent. *Smith* v. *Burnet, 35 N. J. Eq. 314* (at *p. 323*). Acceptance is an equally necessary element to accomplish a change of ownership, for, of course, one cannot be compelled to accept title, even by gift, against his will. It is seldom necessary to be proved, however, since it is ordinarily presumed. In the present case it is of course clear from decedent's actions and declarations that he had on and about March 7th, 1919, an intent or purpose of some kind looking to the transference at some time or other of the ownership of the seventy-three shares from himself to his daughter. But proof of a mere gen-

eral intent or purpose to make a gift is of course not sufficient. The donative intent which must be established is, first, an intent to make a gift as distinguished from an intent to make a transfer of ownership for consideration or an intent to make a mere transfer of possession, and secondly, an intent that the act which is alleged as the delivery or means of effectuating the gift should in fact operate to complete a then present change of ownership. In other words, the inquiry as to the intent must always be pursued with relation to the act of delivery or that which is alleged to be the act of delivery. At the time that act occurred, was there a co-existent intent by the donor that by that act a then present change of ownership by way of gift should be effectuated? If the answer be "No," then no valid gift results; if the answer be "Yes," then a valid gift will be the result, provided the act be such as the law says is sufficient to constitute a delivery. Suppose the father had bought a ring, expecting to give it to the daughter on Christmas, and a week or two before Christmas had handed it to her so that she might try it on to see if it fitted. No gift results, though the act of delivery is legally sufficient, and though there was a general purpose to make a gift, because there was not an intent, at the time of the act, that by that act a gift should be effectuated.

Two acts, in the alternative, are claimed by the daughter as constituting delivery. In the first place, she contends that the action by her father in surrendering his old certificates to the company and procuring the issuance of a new certificate in her name, was a valid delivery or a legally sufficient means of accomplishing the transfer by way of gift; that the gift was therefore complete upon the issuance by the company of the new certificate in her name, and no delivery of that new certificate to her or any other step or act was requisite. In the second place, she contends that if a delivery to her of the new certificate was requisite to complete the gift, that such a delivery was validly made by the depositing of the certificate in the safe deposit box used jointly by herself and her father.

I think there can be no doubt as to the unsoundness of the second contention. If the delivery of the new certificate to her was necessary to effectuate the gift, no gift was made, for the

alleged delivery was not legally sufficient. If the father had not theretofore stripped himself of dominion and control over the subject-matter of the gift, he did not do so by putting the new certificate in the jointly-used safe deposit box. And in order to constitute a legally sufficient delivery, it was requisite that the act accomplish (at least, so far as is possible in the nature of the thing given), a complete divesting of the father of dominion and control over the subject-matter of the gift. *Cf. Swayze* v. *Huntington, 82 N. J. Eq. 127; affirmed, 83 N. J. Eq. 335; Bailey* v. *Orange Hospital, 102 Atl. Rep. 7.*

Neither is there any proof that at the time of the placing of the certificate in the safe deposit box it was done with the then existing intent on the part of the father that there should thereby be accomplished a completed, then present, gift to his daughter. The evidence is not clear as to the time when the certificate was deposited in the box. If we assume (and the evidence is compatible with that assumption) that it was fully signed by the company's officers and placed in the box prior to July 10th, then the evidence as to the July dividend (as to which more hereafter) disproved the existence of such an intent at the time of the deposit. If it was placed there after July 10th, we have no evidence whatever of the particular intent with which it was placed there. He might just as well, as far as the evidence goes, have placed it there for his own safekeeping as with any intent of thereby delivering it to his daughter; in fact, the former is more probable, for, if he had the latter intent, the likelihood would be that he would tell his daughter, whereas, admittedly, she knew nothing of its presence there, or even that it had been signed by the company's officers, until after her father's death.

Turning, then, to the other contention: That the delivery of the new certificate to the daughter was not requisite to the validity of the alleged gift; that the gift had been validly completed and effectuated by the issuance of the new certificate by the corporation. Here, again, we are met by a failure of proof of the requisite intent. Assuming, for the sake of the argument, that the exchange of the old certificates for the new one made out to the daughter would be legally sufficient as a means for effectuating the gift, if it were so intended, it does not by any means

appear that it was so intended. There is no evidence whatever that the father intended to make a gift, or that if he did intend to make a gift he intended to make it there and then. The evidence does show, as I have said, that he intended to make at some time a transfer of ownership, but it does not show that that transfer was not to be conditioned upon or in exchange for the payment or performance of some consideration by the daughter. Neither does it show that he intended that the transfer of ownership, whether by gift or for consideration, was to take effect immediately at that time, rather than at some future time, such as Christmas or a birthday, or even his own death (if a gift was intended) ; or at a time agreed upon (if a transfer for consideration was intended). The evidence is perfectly compatible with any of these possibilities.

Indeed, the evidence contradicts the theory that the father intended that any transfer of ownership, whether by gift or otherwise, should take place at that time. It tends to prove that he did not intend that by the exchange of certificates a completed change of ownership should be effectuated. The proofs as to the July dividend show of course that both father and daughter at that time, three or four months after the issuance of the new certificate, still regarded the father as being, and the daughter as not being, the owner of the stock, and that they both acted in accordance with that regard.

Groff's testimony does not militate against this conclusion, for, in the first place, the July dividend occurrence was apparently subsequent to the decedent's declaration, and, in the second place, that declaration to Groff was not that he had "given" the shares to his daughter, not that he had effectually completed an irrevocable gift to her, but that he had "transferred" them to her, a statement which he might well have made, in view of what he had done, without his having had an intent that the doing of what he had done should immediately and effectually complete a transfer of ownership to his daughter. Furthermore, even if the declaration had been that he had "given" the shares to his daughter, and the evidence as to the July dividend were lacking. the declaration would probably be insufficient to establish a gift. *Smith* v. *Burnet, 35 N. J. Eq. 314* (at *p. 323*).

It is unnecessary to take up the question of whether or not the procuring by the father of the new certificate in the daughter's name would have constituted, without more, a legally sufficient delivery if the requisite intent had been present, for it is clear, from what has already been said, that no valid gift was made under the proofs in the case. Complainant is therefore the owner of the stock and entitled to the dividends subsequent to testator's death which have been withheld by the water company pending this determination.

A decree will be advised in accordance with the views expressed, but without costs.