EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor under the Last Will and Testament of MARGARET C. KANE, Deceased,

*vs.*

HUGH F. GALLAGHER.

*New Castle, June 9, 1949.*

*David B. Coxe, Jr.,* (*H. Albert Young,* Wilmington, on the brief), for plaintiff.

*Joseph Donald Craven,* for defendant.

HARRINGTON, Chancellor: Equitable Trust Company, Executor of the will of Margaret C. Kane, deceased, seeks to compel the defendant to account for 19 shares of stock of Union Park Motors, Inc., standing on the corporate records in his name, and for any dividends declared thereon since January 18, 1947, with interest. Hugh F. Gallagher is the president and controlling stockholder of the corporation, and Margaret C. Kane had been an employee and an officer of the corporation for some years prior to her death

on January 18, 1947. Her rights are based on an alleged gift of the stock by Hugh F. Gallagher, pursuant to an instrument under seal, dated September 27, 1946, and executed by her early in October of that year. No stock certificate was ever delivered or issued to Miss Kane. The 1946 agreement was destroyed by Hugh F. Gallagher after her death. He denies, however, that there was any completed gift of the stock to Margaret C. Kane and says (1) that the 1946 contract was nothing more than an agreement to give her the 19 shares, and not an assignment of that stock; (2) that under the Uniform Stock Transfer Act, *Chapt.* 159, *Vol.* 45 *Laws of Del.,* even an intended gift of stock can only be accomplished by a delivery of the certificate duly endorsed, or by its delivery accompanied by an assignment, or by a power to assign; and (3) that he had a prior or contemporaneous oral agreement with Margaret C. Kane that the 1946 contract should not take effect until she had changed her will and had bequeathed the 19 shares of stock to him should he survive her.

Hugh F. Gallagher is a nephew of Margaret C. Kane's mother, and was quite friendly with the Kane family until shortly after Miss Kane's death. On February 7, 1947, he requested Eleanor M. Kane, the sister of Margaret C. Kane, and the sole legatee under her will, to come to his office. She says he then asked her to get Margaret's copy of the 1946 contract for him, without giving any reason therefor. There is some conflict in the record as to whether any such request was made by Mr. Gallagher but in any event Eleanor M. Kane got the contract from her father and handed it to Mr. Gallagher at her home on February 9th. The weight of the evidence indicates that on or about February 23, 1947, Mrs. Kane, in the presence of her husband, requested Hugh F. Gallagher to return the contract, stating that the Equitable Trust Company was going to settle Margaret's estate and would need it. Eleanor M. Kane was not present at the time. The evidence also indicates that Mr. Gallagher said he still had the paper, but that

"It died when Margaret C. Kane died," and had no value. He does not remember this conversation, but admits that he did not destroy the contract until some time in April of 1947, and after he had been informed that the Equitable Trust Company had refused to administer on Margaret C. Kane's estate and that Eleanor M. Kane intended to handle it herself.

On September 15, 1941, Hugh F. Gallagher executed an instrument, assigning and transferring 19 shares of stock of Union Park Motors, Inc. to the corporation in trust "for and during the term of the natural life of Margaret C. Kane." This was a gift, and the instrument provided that upon her death the stock held for her use was to be divided share and share alike among the donor's three sons (naming them), or the survivors or survivor of them. The corporation was also a party to that instrument. Margaret C. Kane, as secretary of the corporation, had charge of the stock ledger, and by mistake made out a certificate (No. 11) for the 19 shares of stock to Hugh F. Gallagher, Trustee, and wrote her name on the certificate above his name. It seems to have been signed by Mr. Gallagher as president of the corporation and issued and delivered in that form. About a month later, Margaret C. Kane discovered that the certificate was not in conformity with the provisions of the 1941 assignment, and pursuant to the advice of the attorney for the corporation typed on the back of the certificate the unsigned statement:

"This certificate was erroneously issued in the name of Hugh F. Gallagher, Trustee; whereas it should have been issued in the name of Union Park Motors, Inc., Trustee, as per agreement dated May 15, 1941, a copy of which is hereto attached."

This notation was approved by Mr. Gallagher.

Furthermore, Mr. Gallagher testified that he always regarded himself in effect as the corporation, as he controlled it, and conceded that he held the 19 shares of stock under the 1941 assignment and certificate No. 11 in trust

for the benefit of Margaret C. Kane during her lifetime. There was some confusion on the part of the witnesses with respect to the parties to the 1946 contract, but I am satisfied that it was under seal and that it was executed by Hugh F. Gallagher individually, as president of Union Park Motors, Inc., and by Margaret C. Kane and Catharine L. Gallagher. As that instrument has been destroyed and no copy retained, its provisions can only be determined by other evidence.

William H. Kane and Eleanor M. Kane were called as witnesses by the plaintiff, and it appears from their testimony that the first part of the instrument in question related to stock certificate No. 10 of Union Park Motors, Inc., which had been issued in trust for the benefit of Catharine L. Gallagher, sister of Hugh F. Gallagher. The second part related to certificate No. 11 and to rights purported to be given Margaret C. Kane. After the instrument had been finally executed by all of the parties, Margaret C. Kane gave her copy to William H. Kane for safekeeping, and after reading it several times he put it in his safe deposit box in a bank. In the latter part of January, 1947, after the death of Margaret C. Kane, William H. Kane took the contract from his safe deposit box and thereafter kept it in his desk until February 9th, and during that period read it twelve or fifteen times. He testified that the instrument, after referring to stock certificate No. 11, provided:

"After long years of faithful service and devotion to Union Park Motors and Hugh F. Gallagher, its president, Margaret C. Kane is given 19 shares of Union Park Motors capital stock fee simple. In the event of Margaret C. Kane's death, her executors or heirs shall sell back Margaret C. Kane's stock to the Union Park Motors or to J. Harry Gallagher, Hugh F. Gallagher, Jr., Donald J. Gallagher at a price set by the president of the Equitable Trust. No individual (meaning the boys, I judge, his sons) shall receive more than 5 shares." The witness in the course of his

examination repeated and emphasized his statement that the contract contained two pertinent provisions: (1) That Margaret C. Kane "is given" 19 shares of Union Park Motors stock in fee simple (by Hugh F. Gallagher) ; and (2) that on Margaret C. Kane's death, her "executor or heirs" should "sell back" the 19 shares of stock to Union Park Motors, Harry Gallagher, Junior Gallagher, and Donald Gallagher (Mr. Gallagher's sons) at a price set by the president of the Equitable Trust Company.

Eleanor M. Kane testified that she asked her father for the copy of the 1946 contract a day or so before she delivered it to Mr. Gallagher on February 9, 1947; and at her father's suggestion read it three or four times to determine whether it had any value; that it was under seal and the first part of it was a contract between Mr. Gallagher and his sister, Catharine, and the second part a contract between Mr. Gallagher and Margaret C. Kane; that the second part provided that her sister:

> "After long and faithful service to Union Park Motors and to Mr. Gallagher, the president, 19 shares of stock was being given to her (Margaret C. Kane) and in the case of her death that stock was to be sold back to Union Park Motors or to people named, and it was to be sold back by—to Union Park Motors or to Mr. Gallagher's sons and they were named in the contract—or at a price set by the Equitable Trust Company."

Miss Kane later stated that by the terms of the contract, in the event of Margaret C. Kane's death "her heirs or the executor were to sell back the stock to the Union Park Motors or to the Gallagher boys at the price set by the Equitable Trust Company," and that "no Gallagher boy was to buy more than five shares." She testified that the instrument was dated, but could not remember the date. Contrasting its provisions with respect to rights given Margaret C. Kane, the witness particularly noticed the part relating to Catharine Gallagher which provided that "at her death, she was to get nothing from it. It (the stock) was to go back to Union Park Motors." On being asked on cross

examination whether there was anything in the 1946 contract about a prior agreement with Margaret C. Kane, the witness answered "No" Mr. Gallagher's testimony was to the same effect. He stated, however, that the 1946 agreement provided "that there was to be transferred on the books of the corporation (Union Park Motors, Inc.) 19 shares of stock to be given to Margaret C. Kane." This statement is not in accord with the recollection of either William H. Kane or Eleanor M. Kane.

When a party to an instrument deliberately destroys it, the natural inference is that its provisions are against his interest. *Jones v. Knauss*, 31 *N.J. Eq.* 609; 54 *C.J.S., Lost Instruments*, § 13, *pp.* 815, 816. Under such circumstances, more liberality will usually be indulged in when considering the sufficiency of the proof of its provisions than in the case of a lost instrument. *Id.* In any event, the evidence of the Kanes indicates that by the terms of the 1946 contract, under seal, Hugh F. Gallagher purported to give Margaret C. Kane in fee simple the 19 shares of stock in which she had an equitable life interest under the 1941 assignment and certificate No. 11. Margaret C. Kane agreed, however, that at her death the stock should be sold back to the corporation, or to Mr. Gallagher's three sons at a price to be fixed by the president of the Equitable Trust Company, but no son was to be permitted to purchase more than five shares. Whether the language used in the agreement was that Margaret C. Kane "is given" or "was being given" 19 shares of stock by Hugh F. Gallagher is of little importance in determining its intended meaning.

Mr. Gallagher, in his testimony, seems to attempt to construe the instrument rather than to state its terms.

While Eleanor M. Kane is an interested witness, and William H. Kane is her father, I am satisfied that the 1946 contract did not contain an express provision that the stock should be transferred to Margaret C. Kane on the books of the corporation and given to her. Standing alone, there

are some statements of Hugh F. Gallagher in the record which would indicate that the 1946 written instrument did not refer to the same stock in which Margaret C. Kane had an equitable life interest, but when read as a whole that is not the effect of his testimony. He intended to distinguish the equitable life interest from other rights intended to be given in the same stock. He said "The certificate (No. 11) and the old trust agreement was to be cancelled on the completion of the new agreement and the new stock issued." In December of 1946, a dividend of $50 a share was declared by Union Park Motors, Inc., payable to all record holders of stock on December 20, 1946. Margaret C. Kane received a dividend on the 19 shares of stock issued in the name of Hugh F. Gallagher, as trustee, and the inference is that the check was made payable to her, but it is clear that no stock was then registered in her name on the corporate records.

When certificate No. 11 was issued, Margaret C. Kane seems to have placed it in the vault of the corporation, but had access to it at all times. After her death, the word "Revoked" was written by someone on the stub of the certificate in the stock ledger. Across the back of the certificate, and apparently in the same handwriting, was also written: "Revoked as per agreement of the 15th day of May 1941 at the death of Miss Kane."

John L. Carney, the manager of the Union Street office of Equitable Trust Company in Wilmington, a witness called by the defendant, testified in part:

"Q. * * * Mr. Carney, will you tell the court what the conversation (with Miss Kane in December of 1946) was in reference to the stock?

"A. * * * Miss Kane asked me to get her will. She told me she wanted to change it and she further told me that she had an agreement with Huey, as she called him (Hugh F. Gallagher) to will the stock, the 19 shares which was to be issued under the new agreement— she had an agreement with him to will it back to him in case of her death before his.

"A. And she said that after she completed the change of her will and fulfilled that part of the agreement she was going to draw the certificate.

"By the Court:

"Q. Did she say that she had an agreement with him (Mr. Gallagher), Mr. Carney?

"A. Yes—, she said she had an agreement with Huey that in the case of her death the stock was to be willed back to him and that she didn't want to draw it (the certificate) until she completed her part of the agreement.

\* \* \* \* \* \*

"Q. When did she say she made this agreement?

"A. She didn't say when she made it. She said she had an agreement.

\* \* \* \* \* \*

"Q. This other agreement which she said she had, did she say whether that was written or oral?

"A. She did not say, she just said she had an agreement.

"Q. Did you get her will for her?

"A. I did not. I put that off until I came back from Florida."

The record shows that Miss Kane died before Mr. Carney's return.

A certificate of stock is evidence of ownership, in the nature of a chose in action, and like any other personal property may be the subject of a valid gift *inter vivos*. *Wilmington Trust Company v. General Motors Corp.*, 29 *Del. Ch* 572, 51 *A. 2d* 584; 12 *Fletcher Cyc. Corp.*, (*Perm. Ed.*) § 5682. But in order for an intended gift to take effect there must be an actual or constructive delivery to the donee which deprives the donor of all real dominion and control over the stock. *Wilmington Trust Co. v. General Motors Corp., supra; Talbot v. Talbot*, 32 *R.I.* 72, 78 *A.* 535, *Ann. Cas.* 1912C, 1221; 1 *Bouvier's Law Dict.*, (*Rawles Third Rev.*) *Gift, page* 1354; see also *Robson v. Robson's Adm'r.*, 3 *Del. Ch.* 51. In other words, "a mere intention or naked promise to give, without some act to pass the property, is not a gift \* \* \*." 1 *Bouvier's Law Dict.*,

(*Rawles Third Rev.*), *supra, page* 1353. Perhaps the usual and best method of carrying out an intended gift of corporate stock is by the delivery of the endorsed certificate to the donee (*Talbot v. Talbot, supra;* 99 *A.L.R.* 1078; 12 *Fletcher, supra,* § 5682) ; but that is not the only possible effective method. It is often said that the delivery of the certificate, though not endorsed, is at least essential, since dominion over the stock is most effectively secured in that manner. *See* 12 *Fletcher, supra,* § 5682; *cf. Wilmington Trust Co. v. General Motors Corp., supra.* But a deed, purporting to assign and transfer shares of corporate stock to a donee, seems sufficient to complete the gift, though the certificate is not delivered. *Talbot v. Talbot, supra, Harris v. Harris,* 222 *Ill. App.* 164; 24 *Amer. Jur.* 772; 99 *A.L.R.* 1084.

Title to chattels can be transferred by deed, and there seems to be no good reason why the same rule should not apply to shares of stock. 63 *A.L.R.* 540, 553, 559. Acceptance of an intended gift is necessary, but in the absence of some evidence to the contrary it will ordinarily be presumed if the property has any value. *Reiley v. Fulper,* 93 *N.J. Eq.* 112, 115 *A.* 661; *Bouvier's Law Dict.,* (*Rawles Third Rev.*) *supra, page* 1353. Furthermore, the stock in question not only had considerable value, but Margaret C. Kane was a party to the 1946 contract. That instrument indicated an intent to assign and transfer to Margaret C. Kane all of the legal rights in the 19 shares of stock in which she already had an equitable life interest; and if no other questions were involved, the informal words of gift used would be just as effective as the more formal language of the usual deed of assignment. *Cf. Gammon Theological Seminary v. Robbins,* 128 *Ind.* 85, 27 *N.E.* 341, 12 *L.R.A.* 506.

The Uniform Stock Transfer Act (*Chapt.* 159, *Vol.* 45 *Laws of Del.*) could not defeat the alleged rights of Margaret C. Kane in the written instrument as it was not

enacted until 1945, and by its provisions did not affect a certificate previously issued. Furthermore, it only related to transfers of the legal title to shares of stock, and did not prevent the transfer of equitable rights in some other manner. *Stuart v. Sargeant*, 283 *Mass.* 536, 186 *N.E.* 649; *Johnson v. Johnson*, 300 *Mass.* 24, 13 *N.E.* 2d 788; *In re Estate of Jones*, 274 *Ill. App.* 616.

Ordinarily it is not a violation of the parol evidence rule to admit testimony tending to show a prior or contemporaneous oral agreement that a written instrument executed by the parties was not to take effect until the happening of some agreed condition. *Stephens' Digest on Evid., Art.* 90; *Chamberlayne's H. B. Evid.* 1111; *Stabler v. Ramsay*, 30 *Del. Ch.* 439, 62 *A.* 2d 464; *Wilson v. Powers*, 131 *Mass.* 539. But such an agreement must be clearly shown. *Stabler v. Ramsay, supra.* The record shows that in December of 1946, Margaret C. Kane asked Mr. Carney to get her will from the Equitable Trust Company, of which he was an officer, stating that she had an "agreement" with Hugh F. Gallagher, whereby she was to change that instrument and bequeath him the 19 shares of stock covered by the 1946 assignment, in case he should survive her. She did not say whether this agreement was oral or written, or when it was made, but as no written contract to that effect is produced, the necessary inference is that it was oral. Margaret C. Kane also told Mr. Carney in the same conversation "that after she had completed the change of her will and fulfilled that part of the agreement she was going to draw the certificate"; that "she didn't want to draw it until she completed her part of the agreement." Even if her statements justify the conclusion that the alleged oral agreement was prior to or contemporaneous with the written instrument, it provided for a disposition of the stock which was wholly inconsistent with the terms of the written instrument, and, therefore, the evidence of Mr. Carney must be rejected. *Williston on Contracts*, § 634; *Restatement, Contracts*, § 241; 3 *Jones on Evid.*, (2d

*Ed.*) § 1514. But it seems difficult to escape the conclusion that Hugh F. Gallagher could not give the absolute right to the 19 shares of stock in controversy to Margaret C. Kane in 1946. By the 1941 assignment in trust, all rights in that stock were to go to Mr. Gallagher's sons at Miss Kane's death, and there is nothing to indicate that they have relinquished their rights.

The plaintiff points out that certificate No. 11 was made out to Hugh F. Gallagher, and not to the corporation, in trust, as provided in the assignment; but even if that error were not corrected by the subsequent memorandum on the back of the certificate, it could not defeat the rights of the ultimate beneficiaries. Hugh F. Gallagher admits that he held the 19 shares of stock in trust pursuant to the 1941 assignment.

My conclusion is that the plaintiff executor did not acquire any rights in the stock on the death of Margaret C. Kane, and the bill should be dismissed.

An order will be entered accordingly.

Note. Affirmed on appeal. Opinion of the Supreme Court will appear in 32 *Delaware Chancery Reports.* See also 77 *A.* 2d 548.