T.C. Memo. 1997-255

UNITED STATES TAX COURT

WILLIAM P. SHORT, JR. AND MARY E. SHORT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13666-95.                          Filed June 9, 1997.

<u>Mark D. Olson</u> and <u>Eugene H. Bayard</u>, for petitioners.

<u>Alan R. Peregoy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent  determined  deficiencies  in
petitioners' Federal income taxes of $5,828 for 1991 and $35,681
for 1992.  These deficiencies result from respondent's disallowance
of  petitioners'  carryforwards  of  the  unused  portions  of  a

$5,810,000 charitable contribution deduction claimed on their 1988 amended Federal income tax return.

The issue for decision is whether petitioners made a charitable contribution of land to the State of Delaware within the meaning of section 170(a) and, if so, the fair market value of the contribution on the date of donation.

All section references are to the Internal Revenue Code in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners William P. Short, Jr. and Mary E. Short, husband and wife,[1] resided in Bethany Beach, Delaware, at the time they filed the petition herein. For convenience, we refer to William P. Short, Jr. as petitioner.

The Disputed Land

Petitioners owned substantial tracts of undeveloped land along the Atlantic Ocean beaches in Sussex County, Delaware (Sussex County). They claimed title to certain parcels of land (the disputed land) in the same vicinity. The State of Delaware also

---

[1] At the time of trial, both petitioners were ill and unable to testify. The Court has made no adverse inferences as a result of their failure to testify. Petitioners' son, Rodney Short, testified on petitioners' behalf.

claimed title to the disputed land. Petitioners never paid real estate taxes on the disputed land.

## The 1988 Gift Land

At issue is petitioners' ostensible 1988 contribution of approximately 8-acres of the disputed land (the 1988 gift land) to the State of Delaware. At the time of the purported donation, the State of Delaware considered the disputed land, including the 1988 gift land, part of the Delaware Seashore State Park.

Petitioners' claim of title to the 1988 gift land is based on a quitclaim deed that petitioner purchased on August 16, 1982, for $100 (the 1982 quitclaim deed) from J. Bennett Hill, a purported heir to one-fourth of the property interest of a Colonel William D. Waples. Any interest obtained by petitioner apparently derived from an 1839 recorded three-fourths tenants-in-common interest held by Colonel Waples and two other individuals. The 1839 title was the last title interest recorded with respect to the 1988 gift land; and, the chain of title that followed this interest is uncertain and uncorroborated. It appears that Colonel Waples' interest in the 1988 gift land was likely abandoned, and subsequently acquired by the State of Delaware in the early 1900's.

In addition to claiming title to the 1988 gift land under the 1982 quitclaim deed, petitioners also claimed title to the land by adverse possession.

## The State Court Action

On August 3, 1987, F. Michael Parkowski, special counsel and attorney for the State of Delaware, initiated a proceeding against petitioner in the Delaware Chancery Court for Sussex County (the State court action) seeking to quiet title to the disputed land, as well as other relief. The State of Delaware argued that the disputed land (including the 1988 gift land) had been abandoned by any record title owner or heirs dating back to at least 1914 and had then been acquired by the State through adverse possession long before petitioner began taking action to establish a claim. Moreover, State surveys conducted in 1914, 1926, 1929, 1955, and 1977 consistently showed the disputed land as part of the Delaware Seashore State Park. Maps also showed the disputed land as part of State park lands.

On October 6, 1987, petitioners responded to the State's complaint by an answer and counterclaim. Petitioners argued that they had legal title to the property based on the 1982 quitclaim deed as well as through adverse possession. In essence, the State considered petitioners' claim of title frivolous.

## Petitioners' Appraisal

In November 1988, appraiser Laurence P. Moynihan valued the disputed land for petitioners "in order to facilitate a possible donation of the property" to the State of Delaware. Mr. Moynihan valued an unencumbered fee simple interest in the disputed land at $30,130,000, including $5,810,000 for the 1988 gift land.

The 1988 Deed

On December 29, 1988, petitioners executed and recorded in the Office of the Recorder of Deeds for Sussex County a special warranty deed (the 1988 deed), which purportedly transferred the 1988 gift land to the State of Delaware. (At this time, the State court action was in the discovery phase, and settlement discussions had not begun.) Petitioners did not submit the 1988 deed to any State of Delaware official in 1988, other than to the Sussex County Recorder of Deeds, who did not have discretion to reject or not record the deed. Between 1988 and November 1991, the State neither knew of nor accepted any gift from petitioners.

On November 11, 1991, petitioners' attorney, Mark D. Olson, submitted a letter to Edwin H. Clark II, Secretary of the Delaware Department of Natural Resources, transmitting a copy of the 1988 deed. This was the first time the "gift" was officially brought to the State's attention. However, the State rejected the attempted gift in accordance with its position in the State court action.

1992 Settlement Agreement and Dismissal of the State Court Action

Following lengthy settlement negotiations, the State court action was resolved pursuant to an April 15, 1992, Settlement Agreement (the agreement). Pursuant to the agreement, petitioners conveyed to the Nature Conservancy,[2] which immediately conveyed to

---

[2] The Nature Conservancy was a nonprofit environmental preservation organization with its principal office in Arlington, Virginia.

the State, all the disputed land, including the 1988 gift land. The agreement included a side agreement whereby Secretary Clark, who was authorized to sign Internal Revenue Forms 8283 (Noncash Charitable Contributions) on behalf of the Delaware Department of Natural Resources, executed the donee acknowledgment portion of Form 8283 with regard to the 1988 gift land.

Pursuant to the terms of the agreement, deeds and documents were recorded to finalize the property transfer, including a May 29, 1992, quitclaim deed to the 1988 gift land (the 1992 quitclaim deed).[3] The State also had an option under the agreement to purchase additional land from petitioners at a bargain sales price. A July 25, 1992, Stipulation of Dismissal concluded the State court action.

Petitioners' Federal Income Tax Returns

Petitioners did not claim a charitable contribution deduction with regard to the 1988 gift land on their original 1988 Federal income tax return.[4] On April 15, 1992, petitioners amended their 1988 return to claim a refund based on their entitlement to a $5,810,000 charitable contribution deduction, arising from their

---

[3]     The parties utilized a quitclaim deed because Delaware law treats a quitclaim deed as conveying any title that the donor has.  It is not, however, an acknowledgment of title.  Thus, by accepting petitioners' 1982 quitclaim deed, the State of Delaware did not recognize that petitioners ever held title to the 1988 gift land.

[4]     Petitioners reported capital gains in excess of $8 million on their 1988 return.

purported donation of the 1988 gift land.[5] Petitioners subsequently filed amended 1989 and 1990 returns, claiming charitable contribution carryforwards.

On their 1991 and 1992 Federal income tax returns, petitioners carried forward charitable contribution deductions in the respective amounts of $66,741 and $103,784, in connection with the purported donation of the 1988 gift land. These are the deductions at issue herein.

Notice of Deficiency and Amended Answer

In the notice of deficiency, respondent disallowed petitioners' 1991 and 1992 charitable contribution deductions because petitioners failed to establish that they had legal title to the donated property. In the amended answer, respondent alleged, among other things, that because the 1988 gift land was at

---

[5] Petitioners attached the following explanation to their 1988 amended return:

> The taxpayers made a gift of appreciated real property to a charitable donee on December 29, 1988. At the time their 1988 return was filed, however, the taxpayers had not been able to obtain the donee's acknowledgment of the gift on Form 8283. As a result, and acting in accordance with the substantiation requirements of Treas. Regs. section 1.170A-13(c)(2), the taxpayers did not claim a deduction related to the gift on the originally filed return. Subsequently the taxpayers obtained the donee's acknowledgment of the gift on Form 8283 and now file this amended return for the purpose of claiming the deduction as herein set forth.

the center of a lawsuit between petitioners (the purported donors) and the State of Delaware (the purported donee), no donative intent existed and a completed gift was neither made nor was it accepted by the State.

OPINION

Initially, we must determine whether petitioners made a charitable contribution of land to the State of Delaware within the meaning of section 170(c)(1). Assuming we find such a contribution, we must then determine the fair market value of the land. See sec. 1.170A-1(c)(1), Income Tax Regs. Where respondent has disallowed a charitable contribution deduction, the taxpayer must show error in respondent's determination. Rule 142(a).

In determining the existence and timing of a charitable contribution, we apply the same analysis as that in determining the existence and timing of a gift. We have consistently held that there are six essential elements of a bona fide inter vivos gift. These six elements are:

> (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee * * *

Guest v. Commissioner, 77 T.C. 9, 15-16 (1981) (quoting Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936)).  An objective inquiry must be made into the nature of the transaction to determine whether that which is labeled as a gift is in substance a gift.  Pettit v. Commissioner, 61 T.C. 634, 638-639 (1974); Grinslade v. Commissioner, 59 T.C. 566 (1973).

A prerequisite to the required irrevocable transfer is that the donors possess legal title to the property prior to the purported donation.  Assuming the donors held title, the donee must then accept the gift.

The parties agree that the State of Delaware is a qualified donee within the meaning of section 170(c)(1).  The parties, however, disagree as to: (1) Whether petitioners had good legal title to the 1988 gift land at the time of the purported donation; (2) whether the gift was completed and accepted by the State of Delaware; and (3) whether petitioners had donative intent.

We do not believe that petitioners are entitled to 1991 or 1992 charitable contribution deductions with regard to the 1988 gift land for several reasons.  First, petitioners have not satisfied their burden of proving that they possessed good legal title to the 1988 gift land.  At the time of the purported donation, it was doubtful whether petitioners possessed good legal title to the property.  Chain of title was uncertain. Prior to petitioner's purchase of the 1982 quitclaim deed, the last record title to the interest

petitioners claimed was recorded in 1839. Colonel Waples' heirs apparently abandoned their partial interest in the land. The State of Delaware subsequently conducted public surveys showing the 1988 gift land as public land. These surveys were recorded in public records, providing evidence of title for the State. The 1988 gift land was also considered part of the Delaware Seashore State Park. Moreover, petitioners never paid real estate taxes on the disputed land. The existence of pending litigation between petitioner and the State of Delaware is a further indication that petitioners did not possess good legal title to the 1988 gift land at the time of the purported donation.

Petitioners have also not established that they held title to the 1988 gift land by adverse possession. Delaware law permitting adverse possession against the State was repealed in 1953. See Phillips v. State, 449 A.2d 250, 255 (Del. 1982). And nothing in the record supports a conclusion that petitioners adversely possessed the 1988 gift land against the State before (or after) 1953.

Second, even assuming petitioners held title to the 1988 gift land, it does not appear that the State accepted the 1988 deed from petitioners because it had no knowledge of the deed's recording. Delivery to and acceptance by the donee of a deed may not be presumed by mere recording when a deed is not beneficial to the donee or imposes an obligation on the donee and when the donee does not know of its existence. Estate of Mortimer v. Commissioner, 17

T.C. 579, 583 (1951); see also Equitable Trust Co. v. Gallagher, 67 A.2d 50, 55 (Del. Ch. 1949), affd. 77 A.2d 548 (Del. 1950). Accepting the 1988 deed might not have been beneficial to the State of Delaware because it might have been construed as an acknowledgment of petitioners' interest in the disputed land and thus detrimental to the State's position in the State court action. Petitioners' recording of the 1988 deed without communicating its existence to the State attorney who was litigating the State court action clearly indicates that petitioners never attempted to effectuate proper delivery to and acceptance by the State.

Accordingly, we hold that petitioners have not established that they are entitled to any charitable contribution deduction connected to the 1988 gift land in 1991 or 1992.

_____

A final note. At the time of the purported donation, the outcome of the State court action was unknown, and the fair market value[6] of petitioners' interest in the 1988 gift land was either minimal or had mere speculative value. One of respondent's real estate title experts, Daniel Kristol, testified that a speculator might have paid a maximum of $5,000 for petitioners' interest in the

---

[6] The parties presented experts who appraised the 1988 gift land as an unencumbered fee simple interest. Respondent's appraisal expert, Diane R. Maiden, valued the 1988 gift land at $3.5 million. Petitioners' appraisal expert, Mr. Moynihan, valued the 1988 gift land at $5.8 million. These appraisals do not address the fair market value of petitioners' interest in the 1988 gift land because of the questions surrounding petitioners' interest at the time of the purported donation.

1988 gift land in December 1988. We found Mr. Kristol credible. Thus, assuming arguendo petitioners would be entitled to carryforwards in 1991 and 1992 arising from the 1988 charitable contribution deduction, we would hold that the fair market value of petitioners' interest in the 1988 gift land was no more than $5,000 in December 1988.

To reflect the foregoing,

Decision will be

entered for respondent.
